Miller & Pardee, Inc. v. Pardee, 242 Ill. App. 233.

# Miller & Pardee, Inc., Appellant, v. Harvey S. Pardee, Appellee.

## Gen. No. 30,691.

1. Corporations—*validity of resolution allowing officer salary in excess of agreed drawing account.* Where an officer of a corporation was granted a limited drawing account pending determination of his salary, and thereafter, under the direction of the board of directors, performed services as head of certain departments, such services not devolving upon him as such officer or as director, a subsequently adopted resolution of the board allowing him as salary for the intervening period a sum in excess of the amount of his agreed drawing account, as payment for services, was not unlawful or void as to the corporation or its stockholders or creditors, although such officer, as director, voted for the resolution, his vote not having been necessary to its adoption, there being no evidence of fraud or overreaching, the action having been approved by the stockholders, and the sum allowed being reasonable for the services performed.

2. Appeal and error—*omission to assign cross-error as precluding relief warranted by evidence.* Where an appellee assigned no cross-error upon the failure of the trial court to find in his favor as to certain items of the account upon which his claim to a set-off against appellant's claim was based, the Appellate Court, upon reversing a judgment in his favor as to the claimed set-off, cannot give him credit against the appellant for the items first mentioned, although the evidence would have warranted a finding in his favor in respect thereof.

3. Corporations—*validity of resolution fixing officers' salary for period partially elapsed.* Where officers of a corporation had served it from the time of its organization, but the determination of the amounts to be paid them as salaries for such services was from time to time postponed by the directors for over a year and a half, during which time they were allowed drawing accounts and were thus paid partial compensation, a resolution of the directors, adopted after such period, fixing their salaries for that period at figures not unreasonable in view of the services performed, was not illegal or void.

4. Corporations—*power to alter salary of officers after service performed and payment in full.* Where officers of a corporation have been paid in full for their services during a given period, pursuant to a resolution of the directors fixing their salaries at certain sums per annum, until changed, the directors are without power thereafter to alter the salaries of the officers for such period.

5. CORPORATIONS—*retroactive effect of salary resolution.* A resolution of the directors of a corporation, adopted January 13, 1923, fixing the salaries to be paid to its officers "during 1923" will be deemed to apply to the entire year, including the elapsed thirteen days.

6. CORPORATIONS—*retroactive effect of salary resolution.* When directors of a corporation, although re-electing its officers at the beginning of the year, took no action with respect to their salaries until during the following April, and during the interim such officers performed their usual services under a mutual understanding that salaries would be paid therefor at some rate to be determined, such officers were entitled to salaries from the first of the year at the rate fixed by the resolution adopted in April.

7. CORPORATIONS—*validity of salary resolution where interested officer votes therefor.* A resolution unanimously adopted by directors fixing the salaries of the corporate officers is not illegal merely because such officers, as directors, voted for the resolution, where their votes were not necessary to its passage.

8. CORPORATIONS—*validity of salary resolution adopted to secure resignation of officers benefited thereby.* Where officers of a corporation which was in financial difficulties in consequence of their mismanagement of its affairs, conditioned their resignation from office upon the adoption by the directors of a resolution providing that they continue to receive their former salaries for the remainder of the current year, and as directors voted for the adoption of the resolution, such resolution was not binding upon the corporation, regardless of whether such officers, after their resignation, continued to perform any or all of the services formerly performed by them.

Appeal by plaintiff from the Municipal Court of Chicago; the Hon. THEODORE F. EHLER, Judge, presiding. Heard in the third division of this court for the first district at the October term, 1925. Reversed. Opinion filed October 13, 1926. Rehearing denied and opinion modified November 19, 1926.

ZANE, MORSE & NORMAN, for appellant; WALTER WM. PEARSON, of counsel.

PAUL O'DONNELL, for appellee.

MR. PRESIDING JUSTICE TAYLOR delivered the opinion of the court.

This is one of six lawsuits which were heard together in the municipal court. By agreement a con-

Miller & Pardee, Inc. v. Pardee, 242 Ill. App. 233.

solidated bill of exceptions to be used in all six cases was filed in this cause. In this court an order was entered consolidating them for the purpose of brief and oral argument. The titles and number of the cases are as follows: *General Automotive Corp. v. Harvey S. Pardee,* 30,693; *General Automobile Corp. v. Charles A. Pardee,* 30,692; *Miller & Pardee, Inc. v. Harvey S. Pardee,* 30,691; *Miller & Pardee, Inc. v. Charles A. Pardee,* 30,690; *General Automotive Mfg. Co. v. Charles A. Pardee,* 30,689; and, *General Automotive Mfg. Co. v. Harvey S. Pardee,* 30,688.

Each of the six suits is for money had and received by the defendant from the plaintiff, which it is claimed should be paid back, and in each case there is a counterclaim by the defendant for alleged unpaid salary. The trial, which was without a jury, resulted in a finding against the plaintiff's claim in each case. The trial court held, refused and modified various findings of fact, and propositions of law in each case, overruled motions for new trials and in arrest of judgment, and entered in favor of the defendant and against the plaintiff the following judgments:

Case No. 30,693, General Automotive Corp. v.
    Harvey S. Pardee ....................$7,120.00
Case No. 30,692, General Automotive Corp. v.
    Charles A. Pardee ................... 4,937.50
Case No. 30,691, Miller & Pardee, Inc., v. Harvey S. Pardee ....................... 725.00
Case No. 30,690, Miller & Pardee, Inc., v.
    Charles A. Pardee ................... 412.50
Case No. 30,689, General Automotive Mfg. Co.
    v. Charles A. Pardee................. 1,625.00
Case No. 30,688, General Automotive Mfg. Co.
    v. Harvey S. Pardee................. 2,600.00

From each of the judgments an appeal was taken to this court. It is now claimed here that the trial court erred in allowing the counterclaims and in not

giving judgment in each case for the claim made by each plaintiff.

The history of the various transactions involved is so interwoven that it becomes necessary, in order to understand each case properly, to set forth a general resumé of the relations and conduct of the parties from the time they first began to do business together.

In May, 1912, Lindsay H. Miller and Harvey S. Pardee, electrical engineers, both of whom had been working for the Commonwealth Edison Company, formed a copartnership as consulting engineers. Pardee says he became the active member, as Miller did not feel safe in leaving the employment he had. One of the projects of Miller & Pardee was a farm lighting engine known as an "autoplant." On February 28, 1918, they formed a corporation called, "The Autoplant Company," with a capital stock of $75,000, composed of $40,000 of common stock, and $35,000 of preferred stock. Each share was of $100 par value. Harvey S. Pardee subscribed for 200 shares of common and 170 preferred, Lindsay H. Miller for an equal amount, and Albert H. Miller, son of Lindsay H. Miller, for 10 shares of preferred. Tools, patterns, designs, models, patents pending and good will were turned in as of the total value of $50,000. One thousand dollars for 10 shares of preferred paid by Albert Miller was the only cash paid in. Two hundred and forty shares of preferred, subscribed but not paid for, were issued, 120 to Harvey S. Pardee, and 120 to Lindsay H. Miller.

The corporation, Miller & Pardee, Inc., was authorized to do a general electrical business. The two Millers, the two Pardees, Harvey S. and Charles A., and one Evans, were elected directors. Lindsay H. Miller was made president; Charles A. Pardee, secretary, and Harvey S. Pardee, treasurer.

On November 1, 1919, all the rights of the Autoplant Company in regard to the autoplant engine, and

to certain patents and patent rights, were sold by it to Harvey S. Pardee, and the corporate name, ''The Autoplant Company,'' was changed to ''Miller & Pardee, Inc.'' The business of the latter company continued to be or became the manufacturing of electrical switchboards for power plants and screw machine products. Harvey S. Pardee testified that about the beginning of 1921 a business depression occurred and the company was in a difficult situation, and about that time a radiator cap was invented by him and others of the company.

On June 1, 1921, for convenience in selling radiator caps, the General Automotive Corporation was formed. Its capital stock was made up of 200 shares of no par value. Miller & Pardee, Inc., subscribed for 195 shares, and Harvey S. Pardee, Charles A. Pardee, Lindsay H. Miller, James W. Suppoter and Charles F. McElroy, for one share each.

In time, the manufacture and sale of radiator caps turned out to be profitable, and became, practically, the sole business of the two companies, Miller & Pardee, Inc., doing the manufacturing, and the other company, the selling. In the early part of 1924, owing to financial difficulties, a reorganization plan was undertaken, which involved raising money by the sale of common stock of the General Automotive Corporation. That later was abandoned, although meanwhile Miller loaned Miller & Pardee, Inc., $30,000, in the expectation that it would be carried out. On March 23, 1924, a new company, known as the General Automotive Manufacturing Company, was formed. That company then took over the manufacturing, and as a result Miller & Pardee, Inc., became a mere holding company, owning all the stock, except three shares, of the General Automotive Manufacturing Company, and practically all the stock of the General Automotive Corporation.

As to the history of the holdings of stock. The original holdings in the Autoplant Company are set out above. On January 10, 1920, the date of the annual meeting of Miller & Pardee, Inc., the Millers held 204 shares of preferred and 15 shares of common; the Pardees held 39 shares of preferred and 15 shares of common, and others held 7 shares of preferred and 5 shares of common. On January 8, 1921, the Millers held 304 shares of preferred and 109 shares of common, the Pardees, 39 shares of preferred, and 26 shares of common, and others 7 shares of preferred and 43 shares of common. On January 14, 1922, the date of the annual meeting, the Millers held 783 shares of preferred stock (the capital stock having been increased) and 216 shares of common, the Pardees, 70 shares of preferred and 216 of common, and others 25 shares of preferred and 72 of common. On January 13, 1923, the date of the annual meeting, the Millers held 398 shares of preferred and 216 of common stock, the Pardees, 70 shares of preferred and 216 of common, and others 25 shares of preferred and 72 shares of common. In December, 1923, a stock dividend was declared, but on February 5, 1924, it was rescinded. On March 3, 1924, the capital stock was changed to $350,000, consisting of 70,000 shares of common stock, each share of the par value of $5, but it was not distributed until June 14, 1924. At the annual meeting on January 12, 1924, the Millers held 614 shares preferred and common, the Pardees 286 shares, and the others 97.

At a meeting on June 14, 1924, the new stock of Miller & Pardee, Inc., being 70,000 shares, par value of each $5, was distributed, the Millers receiving 30,000 shares, the Pardees, 30,000 shares, and Dewire, 10,000 shares. Up to that time the Pardees had paid into the company in cash altogether about $5,000.

As to the officers. The first officers of Miller & Pardee were as follows: Lindsay H. Miller, presi-

dent, Albert Miller, vice president, Charles A. Pardee, secretary, and Harvey S. Pardee, treasurer. At the annual meeting, January 10, 1924, Harvey S. Pardee became president, and Charles A. Pardee, vice president and treasurer. When on June 1, 1921, the General Automotive Corporation was organized, its stock being practically all owned by Miller & Pardee, Harvey S. Pardee was made president, Charles A. Pardee, vice president and treasurer, and they were re-elected to the same office in 1922, 1923, and 1924. When the General Automotive Manufacturing Corporation was formed early in 1924, some official changes were made in the other companies. In Miller & Pardee, Inc., Harvey S. Pardee remained president, but Charles A. Pardee, though remaining vice president, resigned as treasurer, in favor of Howard F. Kingsley. Harvey S. Pardee became chairman of the board of the General Automotive Corporation, Charles A. Pardee, president, and Howard F. Kingsley, treasurer. In the General Automotive Manufacturing Company, Harvey S. Pardee became chairman, and Charles A. Pardee, vice president.

As to directors. The first board of directors of Miller & Pardee, Inc., was composed of the Millers, the Pardees, and Evans, the father-in-law of Harvey S. Pardee. In 1920, it was composed of the two Millers, the two Pardees, J. J. Miller, and Haynes, who had been the attorney for Harvey S. Pardee, took the place of Evans. On February 4, 1924, Haynes resigned and his place was taken by Kingsley.

The board of directors of the General Automotive Corporation consisted of five members. The Pardees and Lindsay H. Miller were on the board continuously, McElroy, the attorney for the company, was a director until June 14, 1924, and one Huddleston, his law partner, was a director from June 1, 1921, to March 10, 1924. The Pardees constituted two of the three directors of the General Automotive Manufacturing Com-

pany from the time it was formed, March 1, 1924, to June 14, 1924. At the meeting of June 14, 1924, Harvey S. Pardee resigned as president of Miller & Pardee, Inc., but remained a director, and resigned as chairman of the board of the General Automotive Corporation, but remained as a director, and remained as a director and chairman of the board of the General Automotive Manufacturing Company. At the same meeting, Charles A. Pardee resigned as president and director of the General Automotive Company, resigned as vice president of the General Automotive Manufacturing Company, resigned as director and vice president of Miller & Pardee, Inc.

As to salaries and finances of the corporations. From the beginning up to the latter part of 1923, the business, as shown by the statements for the years 1918, 1919, 1920 and 1921, grew in volume and profit. On March 3, 1918, at an adjourned meeting of February 18, 1918, of the board of directors of the Autoplant Company, the fixing of salaries of the department heads was postponed, and by resolution it was provided that "Harvey S. Pardee be allowed to draw any amount up to $175 per month for personal expenses until his salary is fixed, and that Charles A. Pardee be employed by the company at a salary of $125 per month." On November 1, 1919, the minutes of a meeting of the directors held on July 16, 1919, which stated that the fixing of salaries of officers for the balance of the year, from November 1, 1919, should be postponed until the first meeting in 1920, were approved. Part of those minutes is as follows:

"Under financial business the question of salaries of officers which was left open * * * was considered, and * * * it was resolved in accordance with the action of the last meeting of the stockholders to credit the officers as salaries paid for services rendered, with the amounts shown on the books as of November 1, 1919, after Mr. L. H. Miller has refunded

$1,740 credited to him. The books show that H. S. Pardee was credited with $7,350 since the date of organization and Mr. Miller, after making a refund will have been credited with $3,230, and it was explained that this latter amount when added to the amount of salary drawn by L. H. Miller from the Commonwealth Edison Company is equal to the amount credited to H. S. Pardee. It was further explained that approximately $4,042 of the above salaries was charged to the Autoplant work which Harvey S. Pardee is to buy back from the company. Mr. C. A. Pardee was credited with $3,295 salary to date.''

The books showed, however, that from March 3, 1918, to November 1, 1919, there was paid to Harvey S. Pardee the sum of $5,950.

In 1918, the net sales of the business were $25,290.64, and the profits $1,719.01; in 1919, $50,097.10, and profits $694.34. On July 10, 1920, at a directors' meeting it was ordered that the fixing of salaries should be postponed; that the president, Harvey S. Pardee, be authorized to draw an average amount not to exceed $80 a week, and the treasurer, Charles A. Pardee, not over $60 a week, to be charged against their accounts respectively. Both Pardees voted for the resolution.

The net sales in 1920 were $167,453.64, and the profits $4,529.20. Apparently no resolution concerning salaries was passed by Miller and Pardee, Inc., in 1921, and none in 1922, until December. The consolidated balance sheet shows sales in 1921 of $207,015.43, and profits of $2,189.16.

In 1922, owing to the manufacture and sale of the Monogram radiator cap, the volume of business greatly increased. The sales were $748,144.15, and the net profits $155,089.59. On September 9, 1922, a cash dividend of $200 a share was declared on 200 shares of the General Automotive Corporation, or $40,000, which went to Miller and Pardee, Inc., and on October

14, 1922, a cash dividend of $100 a share was declared on 504 shares of Miller and Pardee, Inc., and a dividend was declared on the preferred stocks of Miller and Pardee, Inc. Throughout the year 1922 the matter of increase of salaries was discussed between Harvey S. Pardee and the two Millers, and it was suggested by the former that the matter be submitted to arbitration. Pardee said he told the Millers that he had reference to ordinary salaries for services, and not matters of dividend. Harvey S. Pardee testified that in coming to an agreement, he announced that they, the two Pardees, would not ask more compensation for 1923, if the amounts they were then asking were made retroactive to June 1, 1921, and that Albert Miller said that would be satisfactory. In the latter part of 1922 an understanding was reached.

On December 9, 1922, the directors of the General Automotive Corporation passed a resolution "that salaries of the President and Treasurer for the year 1922 be fixed and paid as follows: To Harvey S. Pardee, President, $17,163.35; to Charles A. Pardee, Treasurer, $10,893.33," both Pardees voting for it.

On January 13, 1923, the directors of that company passed a resolution, both Pardees voting for it, "that the salaries of the President and Treasurer of 1923 be fixed as follows: To Harvey S. Pardee, President, $8,500.00; to Charles A. Pardee, Treasurer, $5,840.00."

On the same date, the directors of Miller & Pardee, Inc., passed a resolution, both Pardees voting for it, "that the salaries of the President and Treasurer during 1923 be fixed as follows: Mr. Harvey S. Pardee, President, $6,500.00; Mr. Charles A. Pardee, Treasurer, $4,160.00." This made the total salaries of the two Pardees for 1923, $25,000. On February 2, 1923, so the minutes of Miller & Pardee, Inc., show, at a special meeting of the finance committee of Miller & Pardee, Inc., which committee had been appointed at a directors' meeting on January 14, 1922, and had the

power to "fix the salaries of officers," a resolution was passed by Miller and the two Pardees, who constituted the finance committee, "that the salaries of the President and Treasurer of Miller & Pardee, Inc., and General Automotive Corporation be fixed at the sum of $25,000.00 per year for the two corporations combined, from the date of the incorporation of the General Automotive Corporation, June 1, 1921, up to and including December 31, 1923. And that the amount to be paid by each corporation be determined and adjusted as soon as practical."

A similar resolution was passed by the finance committee, consisting of the same persons, of the General Automotive Corporation. Apparently, meetings of the finance committees took place before the directors' meetings, and the minutes of the latter were antedated and set back to the dates of the regular meetings to conform to the action of the finance committees.

The salaries voted for in December, 1922, and January, 1923, amounted to something over $35,000, being made up of $25,000 for the year 1922, and about $10,000 for the seven months between June 1, 1921, and the end of 1921, at the rate of $25,000 a year, less the salaries previously voted therefor.

On November 10, 1923, at a directors' meeting, Charles A. Pardee presented a statement to show the condition of the business of the companies. It showed a growth in sales from $39,648 in 1918 to $1,400,356 in 1923, a surplus at the end of 1923 of $339,080, and a profit, with 10 months' tax to be deducted, of $324,209. It showed the employees at the end of 1923 to be 166.

At a joint meeting of the directors of Miller & Pardee, Inc., and the General Automotive Corporation, in April, 1924, apparently by reason of the supposed prosperous condition of the business, a further increase of salaries was discussed and acted upon. On April 12, 1924, at a directors' meeting of Miller & Pardee, Inc., a resolution was passed that salaries be

paid to the officers for the year 1924, as follows: "President Harvey S. Pardee, $200 a month; Vice President Charles A. Pardee, $125 a month; Treasurer, Howard F. Kingsley $125 a month." The minutes show that the resolution was seconded by Miller, and that all five of the directors voted for it. On April 26, 1924, at a directors' meeting of the General Automotive Corporation, on motion of Miller, a resolution was unanimously passed: "That salaries be paid during 1924 to the officers as follows: Chairman of the Board, Harvey S. Pardee, $1,400 a month; President, Charles A. Pardee, $875 a month; Treasurer, Howard F. Kingsley, $875 a month." The two resolutions were voted for by both Pardees and Kingsley, a majority of the directors. On June 14, 1924, at a meeting of the directors of the General Automotive Manufacturing Company, a resolution was passed: "That salaries be paid for the year 1924, beginning as of January 1, 1924, as follows: Harvey S. Pardee, $400.00 a month; Charles A. Pardee, $250.00 a month; Howard F. Kingsley, $250.00 a month; John A. Dewire, $800.00 a month; Olaf A. Colberg, $150.00 a month; Henry G. Dibelka, $75.00 a month." All three directors voted for it, two of them being the Pardees. The three resolutions made a total of $2,000 a month for Harvey S. Pardee and $1,250 a month for Charles A. Pardee, which they were to receive as salary in 1924. The total was apportioned as follows: 10 per cent to Miller & Pardee, Inc., 70 per cent to the General Automotive Corporation, and 20 per cent to the General Automotive Manufacturing Company.

There is considerable evidence concerning conversations and discussions that took place just prior to, or at the time of, the presentation of the two just mentioned resolutions. Harvey S. Pardee said he took the matter up with Kingsley and that the latter said, "We will draw up a schedule of salaries and apportion it among the companies"; that at the meeting on

April 26, Kingsley presented it, all the directors being present. Charles A. Pardee said that Kingsley stated to them that he thought the amounts were in keeping with the amount and value of the services. Kingsley said that at the meeting, addressing particularly Lindsay H. Miller, he told him that the salaries would probably seem to him too high, "that they were high considering the fact that the business was in such bad condition, but that if we could pull that business out and make it successful, that the jobs were worth the money, and that if we could not do it, we should be thrown out, all of us." McElroy said Kingsley told Lindsay H. Miller that he knew he, Miller, thought the salaries too high; that he, McElroy, thought they were too high if merely the present financial condition of the company was considered, but that as they expected to double the number of sales, the salaries were all right; that "if we cannot do that—I think you ought to put us out and get somebody else"; that just before the resolution was passed Miller said, "Well, but the corporation cannot pay those salaries, the way we are situated at the present time"; that he, Kingsley, answered, "Well, of course, we do not expect to draw the salaries unless the money is there. We are not drawing all our salaries. I have not drawn mine. The Pardees tell me they have drawn very little this year so far."

In 1923, 530,750 radiator caps were sold, and in 1924, although it was claimed 1,125,000 would be sold, only 297,128 were sold.

From November 1, 1923, the companies lost money at the rate of something over $20,000 a month. Between November 1, 1923, and the end of December, 1923, the gross profits shrank from $277,037.02 to $205,105.14. The loss for the first five months of 1924 was $84,828.87, making a total shrinkage in profits in seven months of $156,761.75. The surplus of $398,-171.70 of November 1, 1923, was at the end of the

year $246,181.64, and on May 31, 1924, was $161,352.77, a shrinkage of $236,818.93 in seven months.

On December 1, 1923, a cash dividend of $1,250 for each share of the General Automotive Corporation's 200 shares of stock was voted, and on December 8, 1923, a cash dividend of $100 a share on the common stock of Miller & Pardee, Inc., was voted; but on February 4, 1924, both declarations of dividends were rescinded, and notes which had been already given for the dividends were returned.

In January, 1924, the companies were hard up and needed ready money. Haynes and McElroy testified that the condition of the companies at that time was extremely critical, and that they were not able to pay their bills. The Pardees then at the request of the others borrowed $4,502.65 on their life insurance, which policies belonged to the companies, and about $23,000 on a second mortgage on their real estate at Ravinia, to provide funds for current expenses. McElroy testified: "Mr. Haynes said that the financial condition of the company was extremely critical at the time. The company was not able to pay its bills. It was about ten thousand dollars owing to him, which he was very much worried about, and the reason it was not paying the bills was that the Pardees had taken out so much money the year before. And since the Pardees had taken the money which ought to go to paying the creditors, it was up to the Pardees to find some money now to pay the creditors."

Early in 1924, Harvey S. Pardee persuaded Lindsay H. Miller, according to testimony of the latter, to make a trip to Florida to borrow $30,000 from his father, Albert Miller, on the ground that the company needed additional money. In February, Albert Miller loaned the company $30,000 for 60 days to carry on the business until certain stock sales were made as a result of increasing the capital stock of the General Automotive Corporation. Later the proposition to increase

the capital stock was abandoned, and nothing was paid on Miller's loan.

From time to time the Pardees and the Millers had made overdrafts. Those of the Millers, however, were negligible in comparison with those of the Pardees. Charles A. Pardee and his brother began to overdraw in 1921, and in 1923 their overdrafts amounted to $113,000, and by the middle of 1923, Lindsay H. Miller had overdrawn $15,000 and Albert Miller, $1,000. A resolution was passed on November 10, 1923, that notes should be given evidencing the amounts of the respective overdrafts, and in accordance therewith two notes dated September 1, 1923, totaling $108,500.22 were given by the Pardees to Miller & Pardee, Inc. Both notes were marked "nonnegotiable." According to Lindsay H. Miller the chief part of the Pardees' overdraft was made without his knowledge.

On June 14, 1924, a directors' meeting of all the companies was held. At that time, the notes for the overdrafts, with interest, amounted to $113,633.73, and the Pardees were then allowed to give a temporary collateral note secured by stock in Miller & Pardee, Inc. This note was replaced later by a note dated July 3, 1924, for a similar amount, which it was agreed was the amount due at that date. No part of the note covered any items of salary involved in any of the six suits. It was admitted that pursuant to a resolution the Pardees later received back the note for $113,633.73, dated July 3, 1924, and that it was canceled. The receipt given by Harvey S. Pardee to the secretary of Miller & Pardee, Inc., shows that the Pardees had turned over to Miller & Pardee, Inc., in payment of the note, 29,999 shares of the common stock of Miller & Pardee, Inc., practically all that stock they had formerly received as stock dividends. In a letter dated August 25, 1924, signed by Miller & Pardee, Inc., by John J. Miller, president, it

was stated that the note for $113,633.73, representing money due from the Pardees on overdrafts, had been canceled. The payment of the note by a surrender of stock was pursuant to a general resolution of the directors which gave the right to settle in that way to all the stockholders.

The Pardees had received from the companies from January 1, 1922, to June 14, 1924, altogether about $220,000, which was made up of about $115,000 in overdrafts and about $105.000 in salaries and dividends.

Subsequently, after the beginning of the trial, other stockholders availed themselves of the right, and settled their overdrafts by a surrender of stock.

On June 14, 1924, a joint meeting of the directors of the three companies was held at the office of McElroy, secretary and attorney for the companies. The two Pardees, the two Millers, Kingsley and McElroy, being all the directors, and Arista B. Williams, attorney for the Millers, were present. The meeting lasted from 2 p. m. to midnight. At the trial, Williams and all the directors, except Albert Miller, testified.

All six counterclaims made by the defendants for salary for the time between June 14, 1924, and the end of that year are based, chiefly, on what transpired at this meeting. Williams testified that he was there as attorney for Lindsay Miller, and, also, as assisting the corporation, and that he was paid for his services by the corporation. He testified that Lindsay Miller stated to Harvey S. and Charles A. Pardee that the company was in bad financial condition; that the condition was stated; that the Millers would not put any more money into the concern until they got control of the corporation, and if arrangements could be made whereby they had control of the corporation they would consider the matter of financing; that Pardee wanted to know if they would finance the matter, and they finally agreed to do so up to a certain amount, provided they were given control of the corporation;

Miller & Pardee, Inc. v. Pardee, 242 Ill. App. 233.

that at that time the two Pardees were in control, Harvey being president, and the two Pardees holding a majority of the stock; that in answer to the request to surrender control, both Pardees insisted they would have to have their salaries to live on and that they would not give up control unless they retained their salaries for the balance of the year 1924; that the amounts of their salaries for each of the companies was mentioned; that the Millers stated that although it was not satisfactory, they would do it; that as there was certain patent litigation pending, and Harvey S. Pardee had had charge of it, he was to continue in charge of it, and was to do anything necessary relating to the production of patents or the improvement of some other article they were thinking of making, and do any other things that might be asked or required of him by the officers of the company; that, however, he was not to run or manage the company any longer; that Charles A. Pardee was, particularly, to look after the books; that both Pardees stated they would be willing to do whatever the officers wanted them to do and co-operate with the new officers in carrying on the business.

On cross-examination he testified that he told them that the company was in a desperate financial condition; that Albert Miller had advanced a considerable amount of money and was not called upon to advance more, and was not prepared to do so unless the management was changed; that Albert Miller said the same thing; that there was a protracted discussion; that Harvey S. Pardee was to render services, do anything they wanted him to do in any department, and become an employee and be paid, and Charles S. Pardee the same way, but he was particularly to look after the books; that he was to remain vice president of one of the companies; that it was his, the witness' recollection, that a final agreement was reached that the salaries were to be continued and that the minutes

did so show; that he read the minutes of the meeting that were gotten up before they were signed that night, and that they showed correctly what transpired, and, as far as the resolutions were concerned, they were agreed to as they were written up by McElroy. McElroy testified that just prior to the June 14 meeting, he told Harvey S. Pardee, in his brother's presence, that unless the company got $25,000 in money, they could not open up for business the following Monday.

There is considerable testimony concerning what was said at the meeting concerning the subject of salaries to the Pardees. It is conflicting, but it is admitted by all that it was finally agreed that the salaries should be continued to the end of the year. It may be that the subject of salaries was not considered at the meeting until after the Pardees had agreed to resign control, but that, in view of the resolution finally agreed to, and signed by all the parties, is negligible, save as bearing on the question whether the Pardees may be said to have actually sold their resignations for a price.

The minutes of the June 14 meeting show that Harvey S. Pardee resigned as president of Miller & Pardee, Inc., as chairman of the board of the General Automotive Corporation, and as chairman of the board of the General Automotive Manufacturing Company; that Charles A. Pardee resigned as president and director of the General Automotive Corporation, as director of the General Automotive Manufacturing Company, and on July 24 as vice president.

The minutes also show that a resolution was passed by the General Automotive Corporation that the services of Harvey S. Pardee be continued for the balance of the year of 1924 at the rate of $1,400 a month, and the services of Charles A. Pardee be continued for the balance of the year 1924 at the rate of $875 a month, by the General Automotive Manufacturing Company, that salaries be paid for the year 1924, beginning January 1, 1924, as follows: Harvey S. Pardee, $400 a

month; Charles A. Pardee, $250 a month, and by Miller & Pardee, Inc., that the services of Harvey S. Pardee be continued at $200 a month for the balance of the year, 1924. No resolution is shown as passed at that meeting fixing the salary of Charles A. Pardee. McElroy testified that the reason was that Charles A. Pardee did not resign as vice president and the former resolution of April 12, which fixed his salary at $125 a month for the year 1924, was sufficient.

On December 12, 1924, the six suits above mentioned were begun, each of the three companies separately sued Harvey S. Pardee, and each sued Charles A. Pardee. The claims of the companies, as plaintiffs, are chiefly to recover certain amounts of so-called retroactive salaries alleged to have been paid to each of the Pardees, while they were officers and directors, and it is argued that they are recoverable even though the board of directors of each company undertook to authorize them.

In each of the six cases, a counterclaim was made, either by Harvey S. Pardee or Charles A. Pardee for salary claimed to be due for part of the year 1924.

The matters involved in the six claims made by the plaintiffs, and in the six counterclaims made by the defendants, are so interwoven that it seems best to give in this opinion substantially all our reasons for the judgments of this court in all six cases, and adopt this opinion in so far as it is apt in each of the other five cases.

We shall first consider the two cases of *Miller & Pardee, Inc. v. Charles A. Pardee* (General Number 30690), and *Miller & Pardee, Inc. v. Harvey S. Pardee* (General Number 30691). The Pardees were directors of Miller & Pardee, Inc. (known before March 8, 1920, as the Autoplant Company) from January 23, 1918, until June 14, 1924. On January 23, 1918, Charles A. Pardee was elected secretary and Harvey S. Pardee, treasurer, each for one year or

until a successor was elected. The secretary's duties were to keep a record of stockholders' and directors' meetings and proceedings and to affix the seal, etc. The treasurer's duties were to deposit, take charge of, and disburse the funds of the corporation, to render accounts, to make an annual account, and keep full and accurate books of account. The records of the corporation contain no mention of salaries until March 3, 1918, when the directors passed a resolution providing that fixing of salaries of department heads (at that time Lindsay H. Miller was head of the Sales Department and Harvey S. Pardee of the Engineering and Production Department) be postponed, and "that Harvey S. Pardee be allowed to draw any amount up to $175 per month for personal expenses until his salary is fixed and that Charles A. Pardee be employed by the company at a salary of $125 per month, reporting to Mr. H. S. Pardee."

On November 1, 1919, it was voted by the five directors of Miller & Pardee, Inc., that "in accordance with the action of the last meeting of the stockholders, to credit the officers, as salaries paid for services rendered, with the amounts shown on the books as of November 1, 1919"; that the books then showed H. S. Pardee was credited with $7,350; that L. H. Miller, after making a refund would be credited with $3,230, which with his salary from the Commonwealth Edison Company would equalize his credit; that C. A. Pardee was credited with $3,295 to that date; and it was voted that "the fixing of salaries of officers for the balance of the year from November 1, 1919, be postponed until the first meeting of the year 1920."

No change was made after November 1, 1919, until January 10, 1920. The amount that accrued, under the above mentioned authority of March 3, 1918, between March 3, 1918, and December 31, 1919, was, for Harvey S. Pardee, $3,838.70 and for Charles A. Pardee, $2,750. The amount withdrawn by Harvey S. Pardee

in that time was $5,950, and Charles A. Pardee, $3,545. The latter amount is in dispute, but we think the testimony of Williamson, the accountant, and the minutes of the meeting of November 1, 1919, signed by Charles A. Pardee, justify the conclusion that he should be charged with $3,259. It is urged for Charles A. Pardee that although he was credited on the books with the sum of $3,295, as salary to date, and that the credit was ratified, there is no evidence that the credit was balanced by a payment of that sum. That is not a sufficient answer. Charles A. Pardee testified that when he signed the minutes he "thought they were truthful," but he offers no evidence which in any substantial way confutes or overcomes his own signed admission that he received credit in the amount of $3,295, and that it was for salary for the time in question. Then, too, the official record of the corporation, signed officially by him, outweighs, as evidence, his statement that he did not know that there was a credit to him at that time in the sum of $3,295. When one affixes his official signature to a written statement of fact it is not generally overcome by a mere oral denial by him.

The total credit of Charles A. Pardee, under the resolution of March 3, 1918, for March 3, 1918, to December 31, 1919, a period of 21 months and 27 days, at $125 a month, would be $2,750, and as he received $3,545, it is claimed for Miller & Pardee, Inc., that he was overpaid for that period the difference, or $795, unless back salary could be voted to him.

The total credit of Harvey S. Pardee, under the same resolution for March 3, 1918, to December 31, 1919, the same period, at $175 a month, would be $3,838.70, and as he received $5,950, it is claimed that he was overpaid the difference, or $2,111.30, unless, as in the case of Charles A. Pardee, back salary could be voted to him.

On the other hand it is urged for Harvey S. Pardee that as the minutes of the meetings of both directors

and stockholders held on November 1, 1919, recited that Harvey S. Pardee had been given credit on the books of the corporation for $7,350 and Charles A. Pardee for $3,295, and Lindsay H. Miller (after certain debits) for $3,230, the various credits to each were ratified by stockholders and directors, and that as Harvey S. Pardee has received only $5,950 (which amount is admitted) he was underpaid the difference between $7,350 and $5,950, or $1,400. Throughout the whole period from the incorporation of Miller & Pardee, Inc., to November 1, 1919, Harvey S. Pardee, according to his testimony, conducted the sales department and got in practically all the business that the corporation had. By the resolution of March 3, 1918, he was head of the Engineering and Production Department, and it was by the same resolution "that the fixing of salaries of department heads," was postponed, and he was "allowed to draw any amount up to $175 per month for personal expenses until his salary is fixed." From the beginning he performed the duties prescribed and which fell to his lot as head of the Engineering and Production Department, practically all of which were apart from those which devolved upon him as treasurer and director. He testified that he acted as business manager and as the engineer and technical expert.

In our judgment, as the resolution of March 3, 1918, created these departments in the business—sales, engineering and production—and made him, Harvey S. Pardee, head of the last two; as by the same resolution "the fixing of salaries of department heads" was postponed, and he was allowed to draw any amount up to $175 a month for personal expenses until his salary was fixed; as from March 3, 1918, to November 1, 1919, he performed the duties prescribed and which fell to his lot as head of his departments, acting as business manager, engineer and technical expert, employing the personnel, with the exception of shop em-

ployees, purchased equipment, organized the method of conducting the business, handled, as he testified, the sales department, got in practically all the business the company had, and spent all his time on the business of the company; as the minutes of a meeting held on November 1, 1919, recite that "it was resolved in accordance with the action of the last meeting of the stockholders to credit the officers as salaries paid for services rendered with the amounts shown on the books as of November 1, 1919," and that the books showed that he was credited with $7,350; and as it is admitted that he received only $5,950, instead of being overpaid, there was still due to him from Miller & Pardee, Inc., for services up to November 1, 1919, the sum of $1,400. As the trial judge, however, allowed no claim for salary prior to June 14, 1924, and no cross-errors are assigned, no allowance can now be made to Harvey S. Pardee therefor. It is argued for Miller & Pardee, Inc., that Harvey S. Pardee was overpaid, as stated above, in the sum of $2,111.30; that that amount represented a bonus or an amount for past services which the corporation wrongfully credited him with; that the pretended credit was unlawful and void as to the corporation, the stockholders, and its creditors. But the evidence shows that Harvey S. Pardee was only one of five directors and that his vote was not necessary; that the matter had been favorably passed upon by the stockholders; that it was, in reality, for services that did not devolve upon him as an officer or director, and that the compensation was reasonable. There is no evidence of fraud or overreaching of any kind. What was done, was apparently with full knowledge, or opportunity for such, on the part of all. When the business was started, it was conjectural whether it would be a success. It was to be expected and reasonable that at the outset only a drawing account should be provided, and that, as in the course of time as the business went on and became established, and

after postponements on the subject of salary fixing, finally—as in the latter part of 1919, after considering what Harvey S. Pardee had drawn out, as shown by the books,—the amount so drawn should be ratified as proper and reasonable for what he had done in his departments, not as an officer or director, but as distinct and special service and work. What he did, chiefly, was "respecting duty not devolving on him by virtue of the office held." *Rosehill v. Dempster*, 223 Ill. 567; *Corrine Mill, Canal & Stock Co. v. Toponce*, 152 U. S. 405; *Missouri River R. Co. v. Richards*, 8 Kan. 101; *Rosborough v. Shasta River Canal Co.*, 22 Cal. 556; *National Loan & Investment Co. v. Rockland Co.*, 94 Fed. 335.

As to Charles A. Pardee, in our judgment, the evidence shows that he was paid only what was due him up to November 1, 1919, and as to Harvey S. Pardee, that he received nothing that he ought to pay back to Miller & Pardee, Inc.

At the meeting of the directors on November 1, 1919, it was voted that "the fixing of salaries of officers for the balance of the year from November 1, 1919, be postponed until the first meeting of the board in the year 1920." On January 10, 1920, at a meeting at which all the directors were present, Harvey S. Pardee was elected president and Charles A. Pardee, vice president and treasurer, and it was voted "to postpone the fixing of salaries for officers until a subsequent meeting. Until such a time as the salaries are fixed, the president is authorized to withdraw an average amount not exceeding $80.00 per week and the treasurer an average amount not over $60.00 per week to be charged against their accounts respectively." It is claimed for Miller & Pardee, Inc., that if either of the Pardees is entitled to anything for November and December, 1919, it is at the rate of $175 a month for Harvey S. Pardee, and $125 a month for Charles A. Pardee, according to the resolution of March 3, 1918. It is

claimed for the Pardees that they were entitled to salaries for the two months as computed under a resolution of July 10, 1920. The latter claim is, however, obviously untenable, as that resolution only related to "salaries of the officers from and after January 1, 1920." In our judgment, on November 1, 1919, the fixing of salaries for November and December, 1919, was postponed to the first meeting of 1920, and as, at the meeting on January 10, 1920, although Harvey S. Pardee was authorized to draw $80 a week, and Charles A. Pardee $60 a week, the fixing of salaries was further postponed, and no further action was taken until the meeting on July 10, 1920, at which salaries were fixed, but only for a period beginning January 1, 1920, it follows that the Pardees' rights to compensation remained, for November and December, 1919, subject to the resolution of March 3, 1918, that is, $175 a month for Harvey S. Pardee and $125 a month for Charles A. Pardee, making $350 due the former, and $250 the latter, for November and December, 1919. But as the trial judge allowed no claim for salary prior to June 14, 1924, and no cross-errors are assigned, no allowance can be made therefor. Miller & Pardee, Inc., therefore, are not entitled to receive anything back for the year 1919 from either Harvey S. Pardee or Charles A. Pardee.

As to the year 1920. We have already mentioned the action of the board on January 10, 1920. By it, fixing of salaries was postponed, and the Pardees were given a drawing account of $80, and $60 a week, respectively. On July 10, 1920, it was voted unanimously by the five directors that "the salaries of the officers, from and after January 1, 1920, and until changed, be fixed at the following amount, Harvey S. Pardee, $6,600 a year, Charles A. Pardee, $4,000 a year." For the year 1920, Harvey S. Pardee was paid $6,600, and Charles A. Pardee, $4,000.

It is claimed for Miller & Pardee, Inc., that, if anything was due the Pardees for salaries for 1920, they were only entitled to $175 and $125 a month, respectively, pursuant to the resolution of March 3, 1918, for the time between January 1, 1920, and January 10, 1920, to $80 and $60 a week, for the time between January 10 and July 10, 1920, and at the rate of $6,600 and $4,000 a year, respectively, from July 10 to December 31, 1920, and that having been paid $6,600 and $4,000, respectively, for the year, Harvey S. Pardee was overpaid $1,290.47 and Charles A. Pardee, $496.70. In our judgment the resolution of July 10, 1920, purporting to fix the salaries for that year should be considered as an outgrowth of the former resolutions, those of March 3, 1918, November 1, 1919, and January 10, 1920, all of which implicitly recognized that both the Pardees were to receive salaries for their work. In a sense the action of the board on July 10 was not retroactive. The corporation had avowedly employed the Pardees from the beginning, and had from time to time allowed them compensation and paid them, at least in part, for their work, and all with the constant recognition of the fact, that only the determination of the particular amounts remained to be fixed. If then on July 10, the matter that had been postponed, the particular amount, was named and fixed, and was not unreasonable, it would seem to be proper and legal. *Stewart v. St. Louis, Ft. S. & W. R. Co.,* 41 Fed. 736. No case has been cited that holds to the contrary. In our judgment Miller & Pardee, Inc., was not entitled to its claim against either of the Pardees for any overpayment of salary for the year 1920.

As to the year of 1921. As the resolution of July 10, 1920, fixed the salaries of the Pardees at $6,600 and $4,000 a year, respectively, until changed, and as Harvey S. Pardee was paid $4,160 for that year, and Charles A. Pardee, $3,120, it is admitted for Miller & Pardee, Inc., that Harvey S. Pardee was underpaid

$2,440, and Charles A. Pardee was underpaid $880. On the other hand, it is claimed for Harvey S. Pardee that he was underpaid $1,016.67, and that Charles A. Pardee was underpaid $366.67 on the theory that on February 2, 1923, the finance committee of the board of directors (being authorized by the board of directors) fixed the total salary of the two Pardees—for Miller & Pardee, Inc., and the General Automotive Company—from June 1, 1921, to December 31, 1923, at the rate of $25,000 a year.

In our judgment, as the resolution of July 10, 1920, fixed the Pardees' salaries at $6,600 and $4,000, respectively, until changed, the subsequent resolution of February 1, 1923, passed long afterwards, cannot be considered as binding for the year 1921. Their salaries for 1921 had been definitely fixed and already paid in full, and not only that, but in the interim, between the action of July 10, 1920, and February 1, 1923, a resolution was passed fixing definitely the salaries for the year 1922 at $80 and $40 a week, respectively. There is no law that we know of, and none is suggested, that would authorize any such corporate action. Accordingly, in our judgment, Harvey S. Pardee was underpaid for the year 1921, in the sum of $2,440, and Charles A. Pardee, in the sum of $880, and Miller & Pardee, Inc., was not entitled to recover back anything for that year. As to the amount which the Pardees were underpaid, as we have said above, no cross-errors being assigned, they may not be here considered.

As to the year 1922. On December 9, 1922, the directors passed a resolution "that the salaries of the president and treasurer for 1922 be fixed and paid as follows: To Harvey S. Pardee, President, $80 a week, to Charles A. Pardee, Treasurer, $60 a week, to conform to the recommendations of the Finance Committee." Both Pardees were paid for that year according to the resolution, and so both accounts were

balanced. No claim or counterclaim is made for that year.

As to the year 1923. On January 13, 1923, at a directors' meeting, at which Harvey S. Pardee was elected president and Charles A. Pardee, vice president and treasurer, it was voted unanimously that "the salaries of the president and treasurer during 1923 be fixed as follows: Mr. Harvey S. Pardee, president, $6,500, Mr. Charles A. Pardee, treasurer, $4,160." On February 2, 1923, the finance committee of Miller & Pardee, Inc., composed of Lindsay H. Miller, and the two Pardees, voted that "the salaries of the president and treasurer of Miller & Pardee, Inc., and General Automotive Corporation be fixed at the sum of $25,000 per year for the two corporations combined from the date of the incorporation of the General Automotive Corporation, June 1st, 1921, up to and including December 31, 1923. And that the amount to be paid by each corporation be determined and adjusted as soon as practical." It is claimed for Miller & Pardee, Inc., that under the resolution of January 13, 1923, the Pardees were not entitled to salary for the first 13 days of that year, and that for over payment, Harvey S. Pardee owes $231.50 and Charles A. Pardee $148.20. With that contention we do not agree. The time involved is so short and the amounts so small that, in any event, in such a case as this, we should be inclined to apply the principle, *de minimis non curat lex*. Furthermore, the law is not so rigorous as to consider the resolution of January 13, as not applying to the preceding 13 days. No counterclaim is made for anything occurring in the year 1923.

As to the year 1924. On January 12, at a directors' meeting, Lindsay H. Miller was elected chairman of the board, Harvey S. Pardee was elected president, Charles A. Pardee, vice president and treasurer, and McElroy, secretary. On March 5, 1924, at a directors' meeting, Kingsley was elected a director in place of

Miller & Pardee, Inc. v. Pardee, 242 Ill. App. 233.

Haynes, and the resignation of Charles A. Pardee as treasurer was accepted, and Kingsley elected in his stead. On April 12, 1924, the directors voted "that salaries be paid to the officers for the year 1924, as follows: President, Harvey S. Pardee, $200 a month: Vice President, Charles A. Pardee, $125 a month." On June 14, 1924, Harvey S. Pardee tendered his resignation as president, which was accepted, and Kingsley was elected in his stead. At the same meeting Charles A. Pardee resigned as vice president and director. No resolution was shown as to Charles A. Pardee, but he testified that he "signed the resignation." As to the period between January 1, 1924, and June 14, 1924, it is claimed for Miller & Pardee, Inc., that Harvey S. Pardee was, at the most, entitled only to salary as president from April 12 to June 14, 1924, a total of $418.73, and as he was paid, $983.31, Miller & Pardee, Inc., is entitled to recover the difference, being $564.58, and that Charles A. Pardee was, at the most, entitled to salary as vice president only for the same period, a total of $254.08; and as he was paid $821.68, he owes the difference, or $567.60. On the other hand, it is claimed for the Pardees that they were entitled respectively to salaries at the rate of $200 and $125 a month from January 1 to June 14, 1924, according to the resolution of April 12, 1924, and as the salary of Harvey S. Pardee for the five and a half months, at $200 a month, was $1,100, and he was only paid $408.31, he was underpaid $691.69, and as the salary of Charles A. Pardee from January 1 to June 14, 1924, at $125 a month, was $687.50 and he was paid $421.68, there was an underpayment to him of $265.82. In our judgment the Pardees were underpaid, and Miller & Pardee, Inc., is not entitled to recover from Harvey S. Pardee the amount he was alleged to have been overpaid for that period, that is, $564.58, and is not entitled to recover from Charles A. Pardee, the

amount he was alleged to have been overpaid for that period, that is, $567.60.

It is argued for the Pardees that toward the end of 1923 and at the beginning of 1924, the matter of salaries was discussed between Lindsay Miller, Kingsley and the Pardees, but the evidence does not show any agreement or that there was any final understanding as to amounts. But it is a fair inference that all understood that salaries were being earned and at some rate would be paid. The Pardees had been at work all the time, and although definite corporate action was not taken on or before January 1, 1924, it would seem to be in accord with the law and with the facts, no fraud being shown, and the amounts being shown to be reasonable, to sanction them as proper charges.

As to the period between April 12 and June 14, 1924, we are of the opinion that the Pardees were entitled to salaries pursuant to the resolution of April 12, 1924, that is, at the rate, respectively, of $200 and $125 a month. The result is that for the five and one-half months from January 1 to June 14, 1924, Harvey S. Pardee was entitled to $1,100, and having been paid $408.31, he was underpaid to the extent of $691.69, and that as Charles A. Pardee for the same time was entitled to $687.50, and was paid only $421.68 he was underpaid $265.82. These items, however, may not be considered here in the absence of cross-errors.

As to the Pardees' counterclaim against Miller & Pardee, Inc., for the period from June 14, 1924, to the end of that year: Harvey S. Pardee claims that he was entitled to $1,300, being $200 a month for the remaining six and a half months, and that as he was only paid $575 there is a balance due him of $725, and Charles A. Pardee claims he was entitled to $812.50, being at the rate of $125 a month, and as he was paid only $400 that there is still due him $412.50. We have already cited the resolutions that were passed on April 12, 1924, and June 14, 1924. The question now is whether

the corporation was bound from June 14, 1924, up to the end of the year. It is claimed for Miller & Pardee, Inc.: (1) That where a salary is voted to an officer, the action is illegal if it is carried by his vote, or produced by his influence; (2) that an agreement to give or pay a consideration for the resignation of an officer or director is void and illegal because directors and officers stand in the relation of trustees to their corporation and cannot sell their offices for a consideration, and that those who claim damages for alleged breach of employment must mitigate the alleged damages by endeavoring to secure other employment, and must credit against the alleged damages any moneys so earned.

Was the action of April 12, 1924, and of June 14, 1924, illegal because the Pardees voted for the resolution? There were five directors, of which the Pardees were two, and both voted the resolutions being passed unanimously. Miller & Pardee, Inc., and the General Automotive Corporation each had five directors, of which the Pardees were two, and the General Automotive Manufacturing Company had three, two of whom were the Pardees. Both resolutions were passed by a unanimous vote. We do not think that the bare fact that each of the Pardees voted in the affirmative in the case of Miller & Pardee, Inc., and the General Automotive Corporation is sufficient to make the resolutions illegal. No case cited seems to go that far. In *McNulta v. Corn Belt Bank,* 164 Ill. 427, the court said: "The law is, that, where a salary or compensation is voted to a director, the vote is illegal, if it is carried only by including the vote of the director who receives the pay or salary. (1 Cook on Stock, etc., sec. 567.) Where the chief stockholder, who is president, *induces the directors* to vote a large salary to him, the corporation may defeat the officer's action at law to recover it. (Ibid; also, *Miner v. Belle Isle Ice Co.,* 93 Mich. 97.) Directors cannot vote a

salary, much less a large bonus or compensation in addition to a salary, to one of their number, as president, when he takes part in the proceeding, or his vote is essential to the adoption of the resolution. (*Wickersham v. Crittenden,* 93 Cal. 17, and cases cited; *Gridley v. Lafayette, B. & M. Ry. Co.,* 71 Ill. 200.)" *Voorhees v. Mason,* 245 Ill. 256, and *Adams v. Burke,* 201 Ill. 395, confirm the same principle. The law is that personal interest and profit must not jeopardize corporate duty. It is based on a well recognized general infirmity of human nature. It seeks to eliminate what might be a danger, conduct that would be personally advantageous, but as to the corporation, an injury. In the *Adams case, supra,* Mr. Justice Cartwright said: "The law is, that where a salary or compensation is voted to an officer, the resolution is illegal if it is carried by his vote or produced by his influence, where he has a controlling interest." *Gridley v. Lafayette, B. & M. Ry. Co.,* 71 Ill. 200; *Mallory v. Mallory Wheeler Co.,* 61 Conn. 131; *Wonderful Group Min. Co. v. Rand,* 111 Wash. 557.

As to the legality of the resolution of June 14, 1924, it is necessary, we think, to bear in mind not only how and by whom and for what purpose the votes were cast, but the condition of the corporation at the time, and the relations and conduct of the interested parties. The evidence is voluminous and of course cannot here be even fairly summarized. In our opinion the overdrafts of the Pardees, amounting to about $113,000, had in great part precipitated the desperate financial state in which the three companies were, being short of necessary credit and cash, in the early part of 1924, and as the evidence shows that the other directors were in reality averse, and, apparently properly, to a continuance of large salaries to the Pardees, it is obvious, from all the pertinent evidence, that the resolution of June 14, 1924, was passed not only to change the management and enable the companies to

be financed, but, as a coincident necessity for the purpose of "buying" the Pardees out of office so that the changes might be made; and, as the Pardees, as trustees of the corporations, owed duties to the corporations, their stockholders and creditors, as well as to themselves, having been placed in positions of trust by the stockholders, and were in duty bound to be faithful to their obligations and responsibilities, such as the law prescribes, it was a violation of their trust and duty to the corporations to urge and insist that they be "bought" out and then finally, to accomplish their purpose, to vote for their own profit and advantage. As the court said in *Forbes v. McDonald*, 54 Cal. 98: "They may resign when they please, but they must not make profit or benefit to themselves in the matter of such resignation." It follows that the resolution of June 14, 1924, as far as it undertook to promise salaries to the Pardees for the rest of the year, was illegal and void. The facts here do not involve, as in *Hooker v. Midland Steel Co.*, 215 Ill. 444, the obligations of a director to a particular stockholder, growing out of their personal relations, but involve the obligations of directors to the corporation itself. In the former case there is no corporate trust relationship; in the latter there is. In the *Hooker* case, *supra*, Mr. Justice Cartwright said: "The management of the business and property of a corporation is entrusted to its officers, and they are empowered to act for the whole body of stockholders. They therefore occupy the position of trustees for the stockholders as a body in respect to such business and property, and cannot have or acquire any personal or pecuniary interest in conflict with their duty as such trustees."

In *Farwell v. Pyle-National Electric Headlight Co.*, 289 Ill. 157, the court sanctioned the principle laid down by Mr. Justice Cartwright in the *Hooker* case, and, also, quoted with approval from *Michoud v. Girod*, 4 How. (U. S.) 503, the following language: "The

general rule stands upon our great moral obligation to refrain from placing ourselves in relations which ordinarily excite a conflict between self-interest and integrity. * * * In this conflict of interest the law wisely interposes. It acts, not on the possibility that in some cases the sense of that duty may prevail over the motives of self-interest, but it provides against the probability in many cases, and the danger in all cases, that the dictates of self-interest will exercise a predominant influence and supersede that of duty.'' *Cheeney v. Lafayette, B. & M. Ry. Co.,* 68 Ill. 570; *Voorhees v. Mason,* 245 Ill. 256.

It is urged for the Pardees that the stock was held chiefly by them and the Millers, and that they could make contracts between themselves, practically without regard to others, but the answer to that is, they were in no sense partners; there were no joint and several rights and obligations between them as individuals, or as to creditors and third persons. The business was owned by chartered corporations and could be legally conducted only subject to the established law applicable to the conduct of such institutions. The case of *Joseph v. Raff,* 82 N. Y. App. Div. 47, is cited as an authority that the promise of June 14 to pay salaries was binding. In that case, the court said that the agreement was made not only in good faith, but in the honest belief that the corporation was solvent and would be able to continue business. Here, the evidence shows that the corporation, all three of them, in fact—as they were financially mutually dependent—were, owing chiefly to the large overdrafts of the Pardees, in a desperate financial condition, and, in order that it might obtain ready money so as to go on, a change of management became necessary, which involved the resignations of the Pardees, and, yet, knowing those facts, and using them as an influence, they insisted that as a consideration for their resignations they should be paid salaries for the rest of the

year.   To permit an officer of a corporation which is in dangerous and failing circumstances to sell his office of trust, and obtain his price therefor against the desires, though with the sanction of the other officers, would open the door in the commercial world— especially in these days, when so large a part of all property rights is vested in corporations—to many dangers and probably much fraud.

In the view we take of the case, it becomes unnecessary to consider whether the Pardees refused to work or did any work after June 14, or whether they should have shown that they had no other employment and could not get any.   It may be said, however, that the evidence tends to show quite convincingly, not only that one of the chief elements of the consideration for the passing of the resolution and, therefore, for the promise of salaries, was the relinquishment of the management, and of their offices, but that there was no intention or understanding either on the part of the corporation, or the Pardees, that services should or would be rendered by the Pardees at all commensurate with the amount of the salaries voted.

In addition to the claims concerning retroactive salaries, Miller & Pardee, Inc., make a claim against Harvey S. Pardee for certain miscellaneous items pertaining to a product called "Tire Yeast."   They consist of seven amounts, totaling $287.33.   It is the theory of Miller & Pardee, Inc., that it was charged that amount, although the expense was in reality that of Harvey S. Pardee, personally.   The trial judge disallowed the claim.   The evidence on the subject is conflicting as to whether the charges should have been made against Miller & Pardee, Inc., or against Harvey S. Pardee.   The latter testified that the matters involved—certain work and experiments—were for the benefit of the company.   We have examined all the evidence on the subject and do not feel justified in overriding the judgment of the trial judge on this

item. Not only is there direct evidence that the charges made were for work and materials for the benefit of Miller & Pardee, Inc., but there is testimony that the note which was given to settle the overdraft covered all the charges, which were at that time outstanding against both Pardees.

In the instant case of Miller & Pardee, Inc., against Harvey S. Pardee, therefore, our judgment is as follows: (1) That the plaintiff, Miller & Pardee, Inc., is not entitled to recover anything on its claims from Harvey S. Pardee for overpayment of salary, or for the miscellaneous items, which judgment accords with the finding of the trial judge; and (2) that Harvey S. Pardee is not entitled to recover anything on his set-off for alleged salary for the period beginning June 14, and ending December 31, 1924. Our conclusion that Harvey S. Pardee is not entitled to recover anything on his set-off is because we find, as a matter of law, that the learned trial judge erroneously considered the resolution of June 14, 1924, as creating a binding obligation on the corporation.

The judgment, therefore, will be reversed.

*Reversed.*

O'CONNOR and THOMSON, JJ., concur.