**Maurice Jason, Plaintiff-Appellant, v. Milton Drane and Priscilla Drane, Defendants-Appellees.**

**Gen. No. 51,617.**

First District.

May 13, 1968.

Rehearing denied June 21, 1968.

George C. Rabens, of Chicago, for appellant.

George C. Adams, of Chicago, for appellees.

TRAPP, J.

Plaintiff appeals from a decree of the Circuit Court of Cook County, Illinois, which set aside a contract for repair of fire loss damage and awarded plaintiff a portion of the proceeds of certain fire insurance settlements upon a quantum meruit basis.

Plaintiff asserts that the determination of the court was contrary to the manifest weight of the evidence, and that although the cause was referred to the Master in Chancery under a limited reference, the Master in Chancery took evidence on matters beyond the scope of the order of reference, and based his findings on such matters. Plaintiff urges that the court erred in adopting the Master in Chancery's report on the matters outside of the scope of the reference.

The complaint alleged that plaintiff is a general building repair contractor who does business under the name Fire Loss Appraisal Company; that defendants, Milton Drane and Priscilla Drane are contract purchasers of a building known as 4800 South Princeton Avenue, Chicago, Illinois; that subsequent to a fire which occurred December 7, 1960, plaintiff and defendants entered into a contract in writing by which plaintiff was to repair the fire damage and was to receive therefor an amount equal to the fire loss claim; that defendants agreed to pay plaintiff the amount equal to the settlement agreed upon between plaintiff and representatives of the insurance companies; that plaintiff completed the work agreed upon; that the fire insurance companies issued drafts in the total sum of $5,733, which were payable to the owners, plaintiff and plaintiff's attorney; that plaintiff alone is entitled to the drafts; that defendants, Milton Drane and Priscilla Drane refuse to endorse the drafts and that plaintiff is without remedy except in a court of equity.

The original answer asserted that the contract was obtained by fraud and misrepresentation; that defendants did not understand the contract; that the work was

improperly done and was not completed, and that defendants had to expend large sums to have the work completed. By amendment to the answer made after the taking of some of defendant Milton Drane's testimony, it was alleged that in August of 1960, Milton Drane became ill of hypertension and a nervous disorder, that he had been a mental health patient under the care of Dr. Harold M. Visotsky, and that he received treatment as a mental health patient on September 15, 1960, October 15, 1960, October 17, 1960, October 21, 1960 and December 21, 1960, at the Southside Community Health Center. It alleged that since said dates he has been a patient at various Veterans' Hospitals for psychiatric and medical treatments. It specifically alleges that on December 7, 1960, when the contract was signed, Milton Drane did not have the mental capacity to understand what he was signing.

Under the order of reference to the Master in Chancery, the authority was "limited solely to the issue of fraud in the obtaining by plaintiff of contract from the defendants Drane." Motions by defendant for an unrestricted reference were denied.

The Master in Chancery received testimony on the circumstances of the execution of the contract, the work performed by plaintiff and subcontractors, the quality of the work performed, the work done at the expense of defendants, the work remaining undone and the mental condition of the defendant, Milton Drane.

The Master's report includes the following findings:

"4. The Master further finds that on December 7, 1960, the building at 4800 Princeton Avenue caught afire about 8:30 A. M. The Plaintiff called upon the Defendant about 9:00 A. M. and secured his signature upon the promise to make temporary repairs so he could have heat in the zero weather.

246

" . . .

"8. (c) About August 15, 1960, Milton Drane was compelled to leave his employment on account of illness, and has not been able to do any work since that time up to the present time.

"(d) On December 7, 1960, he was home ill at the time of the fire.

"(e) Dr. Harold Visotsky, on October 5, 1960, made a report of his diagnosis of Milton Drane as follows:

> " 'Mr. Drane appears to be suffering from a Chronic Paranoid Schizophrenic reaction with much reoccupation with physical symptomatol-, ogy. This appears to be well encapsulated and relates only to a multitude of physical complaints vaguely associated with a surgical procedure in 1957. He states these symptoms do not affect his work—but operate primarily during the periods of going to work or coming back.'

"(f) The Master finds from the evidence and the doctor's report that a man suffering from the above illness would be subject to undue influence, persuasion and subject to sign most any paper presented to him for his signature under the stress, strain and excitement of a fire in his building on a zero day when all the windows in his apartment were knocked out by the fire department, electric lights cut off, subjecting the plumbing to a possible freezing, and causing him not to have heat in the building.

"(g) The Master finds that the contract signed by Milton Drane on December 7, 1960, during his physical and mental illness, just after the exictement of the fire and during the time his windows were knocked out by the fire company, and the pipes subject to freezing and the electricity cut off, he was not mentally and physically able to know the conse-

quences of his acts, and said contract is void and unenforceable against him.

"(h) The Master further finds from the personal appearance, examination and questioning of Milton Drane that he could not remember dates and was indefinite and unspecific as to the answer to the various questions asked him while he was on the witness stand, all of which indicated that he was unable to properly conduct this litigation."

The Master found that the plaintiff did not do the work himself, but employed a subcontractor. The latter was subpoenaed to produce his bills and invoices. The Master found that the bills and invoices corroborated the testimony of a professional engineer that the work done, including labor and materials, should not have exceeded $2,100. The Master found eight substantial items of fire damage that were not repaired, and that fifteen relatively substantial items were not satisfactorily repaired. The Master also found that the defendants have been required to expend large sums in repairing portions of the apartment that plaintiff failed to repair.

 The abstract does not contain all of the testimony. We cannot, therefore, obtain the same total impression as that obtained by the Master in Chancery. While the statement that the contract was obtained by representation that it was for the purpose of authorizing temporary repairs is asserted on one side and denied on the other, we cannot say that the Master's finding that the contract was so obtained is against the manifest weight of the evidence. While it is true that proof of fraud must be clear and convincing, nevertheless, the mental condition of one of the parties is of importance. Additionally, all of the circumstances surrounding the execution of the contract may have relevance on the issue of fraud. Majewski v. Gallina, 17 Ill2d 92 at 99, 160 NE 2d 783.

Here, under circumstances which would be productive of some shock to an ordinarily well-balanced person, within an hour of the occurrence of a fire, in a situation demanding action to preserve property, an experienced building contractor obtains a written contract from a sick man who is also under treatment for mental illness, to cover a repair job involving many unknown factors. It is noted that the original contract is without "specifications." It is further noted that the subsequent "specifications" are, in fact, only a list of items to be repaired, and leave a great deal to the judgment of the contractor. In performance, the repairs are incompletely done and in some respects poorly done at a cost of 30 percent to 40 percent of the insurance proceeds. Additionally, the defendant is required to spend almost half as much as the plaintiff in doing work which should have been done. We do not believe that the history of the performance can be completely disassociated from the original intent in passing judgment upon the conduct of the parties.

Certainly a different light would be thrown upon the situation if the work done had been prompt, beyond complaint and at a cost approximating the settlement. It is obvious from the Master's findings, particularly the findings regarding unsatisfactory work, that the evidence regarding performance together with the evidence relating to the procuring of the alleged contract, had a bearing upon the determination of the issue of fraud.

Neither was the Master in Chancery required to overlook the facts that the short printed form prepared by the seller had an "authority," not including specifications, which bore a printed and not too prominent "assignment," nor the fact that the call at the home was unsolicited by the buyer. The Legislature has recently viewed unsolicited home sales with such suspicion as to make them voidable at the option of the buyer. Chapter 121½, § 262B, Ill Rev Stats 1967.

■ Considering the weight to be given to the foregoing factors, one cannot say that the Master in Chancery

exceeded the limited reference in examining the issue of performance of the contract. The issue of limitations upon the scope of the order of reference was presented to the Chancellor upon exceptions filed to the Master's report. The record discloses that the plaintiff fully presented evidence upon all the issues developed in the proceedings. The test is whether or not he was harmed or prejudiced by the absence of evidence when the proceedings are determined by the Chancellor. Federal Life Ins. Co. v. Looney, 180 Ill App 488; Cohn v. Cinman, 85 Ill App2d 285, 230 NE2d 23.

Plaintiff argues that the fact that Milton Drane subsequently watched workmen performing the work establishes the error of the Master in Chancery, and of the Chancellor, in finding that the defendant was not capable of knowing, and did not know he was signing a contract for a complete repair job in consideration of assignment of the entire insurance proceeds. Such fact does not establish the enforceability of the alleged contract. The decree finds, and the evidence supports it, that there were objections to the performance of the work undertaken. Defendant's conduct established, at best, a liability for payment of the reasonable charges for the work actually done.

Plaintiff also contends that the proper measure of damages is not the reasonable value of plaintiff's work, but the reasonable cost of completing the repairs. This contention is based upon the theory that plaintiff had a valid contract for repairs for a consideration of the entire insurance proceeds. Our view that the plaintiff did not have such a valid contract disposes of this contention.

The decree of the Circuit Court of Cook County is affirmed.

Affirmed.

SMITH, P. J. and CRAVEN, J., concur.