BERNARD MAJEWSKI, Appellee, *vs.* VINCENT JAMES GALLINA *et al.*, Appellants.

*Opinion filed May 22, 1959—Rehearing denied September 22, 1959.*

Melvin B. Lewis, of Chicago, for appellants.

Stanley Werdell, and Edward A. Bogucki, both of Chicago, for appellee.

Mr. Justice Klingbiel delivered the opinion of the court:

Plaintiff, Bernard Majewski, instituted proceedings to have a constructive trust declared on certain property of which defendants, Vincent J. Gallina and Frank Rusin, and Marion Kogut, now deceased, allegedly defrauded him. The superior court of Cook County entered a decree confirming the master's findings and conclusions that defendants had conspired to defraud plaintiff of the property, and ordering defendants Vincent J. Gallina and Frank Rusin to pay plaintiff the sum of $5,375 as part of the purchase price, and to pay the litigation costs. Defendants appealed therefrom to the Appellate Court, First District, and plaintiff filed a cross appeal on the ground that defendants' fraud

warranted the imposition of a constructive trust, rather than the money decree. The cause was transferred to this court on the ground that a freehold is involved.

The essential issue on this appeal is whether the findings and conclusions of the chancellor, relating to defendants' alleged fraud and the remedy therefor, are supported by the evidence and the law.

From the voluminous record of controverted testimony, it appears that on September 18, 1952, plaintiff Bernard Majewski and Narcyz Orlowski purchased a three-flat apartment building and garage located at 3610 N. Cicero Avenue, Chicago, at a price of $23,000. On January 5, 1955, Bernard Majewski purchased Narcyz Orlowski's half interest in the property for the sum of $6,700, subject to a mortgage of $7,200. In both of these transactions, plaintiff was represented by defendant Marion Kogut, a licensed attorney and real-estate broker, whom plaintiff had known for some 20 years, during which she had filed numerous income tax returns for plaintiff, and had drafted his will.

According to plaintiff's testimony, after his purchase of Orlowski's half interest, defendant Kogut urged plaintiff to sell the property, stating that it was going down in value. On January 21, 1955, while plaintiff was in defendant Kogut's office, she had her husband go upstairs and bring down Frank Rusin, a wealthy real-estate man and investor in business opportunities. Rusin had his offices in the same block, and knew Marion Kogut for over two years, during which he had purchased three parcels of real estate through her office. Plaintiff refused Rusin's offer of $18,500 for the building, which Rusin stated would soon be worth only $14,000, and Rusin refused to sign the contract Kogut drew up for the sale of the property for $20,000.

Within the next two weeks, however, Rusin secured an oral commitment from the Supreme Savings & Loan Association for a $19,100 mortgage on the property, after the company had appraised it for $25,500. Rusin paid for that

appraisal. During this same period, Rudolph Bartel, a client of Kogut's, who was in her office when plaintiff mentioned that he was trying to sell his property, also offered to try to sell it. In his testimony for defendants Bartel stated that he had tried to sell the property for $21,500, and admitted that the property was worth $22,500 to $23,000 at that time.

On February 10, 1955, defendant Kogut telephoned plaintiff that she had a cash buyer for his property. When plaintiff came to her office, despite his not feeling well, he met defendant Vincent J. Gallina, who was employed by Rusin as a salesman of business opportunities and new accounts, and as a general messenger. When plaintiff inquired about the pending contract with Rusin, Kogut told him that it was "waste." She prepared a contract in their presence for the sale of the property to Gallina for $19,500, of which she was to receive $500 as a commission, and plaintiff was to be paid in part by a note, secured by a second mortgage, for $5,000 at an interest rate of 4 per cent. The figure "4" was written over after the figure "5" had been crossed out. Plaintiff claimed, and Gallina denied, that the figure was changed by Kogut without plaintiff's knowledge and after he signed the contract. No earnest money was required, and the contract did not specify the amount of the first mortgage to be secured by Gallina.

Plaintiff stated that he thought Gallina was going to assume the existing mortgage, but defendant Gallina, who knew of Rusin's commitment for the $19,100 mortgage at the time, stated that he indicated no such intention. Plaintiff signed the contract in Kogut's office, after, according to his testimony, Kogut repeatedly urged him to sign it, or else she would not bother with him later, because the property was going down in value. Gallina, however, signed the contract subsequently in Rusin's office, although he did not recall whether Rusin was present at the time.

On February 21, 1955, Gallina submitted a formal mort-

gage application for a $19,100 mortgage to the Supreme Savings & Loan Association, alleging a purchase price of $26,500 for the property, and giving Marion Kogut as a reference, even though he claimed that he had met her only on that one occasion. The loan application was approved. On March 4, 1955, plaintiff, accompanied by defendants Kogut, Rusin and Gallina, went to the office of the loan association to close the deal, with Kogut the only lawyer in the transaction. Plaintiff, believing that Gallina was taking over his old mortgage, handed Gallina the mortgage payment book. At Rusin's direction, the new mortgage was disbursed by the issuance of separate checks : one to Avondale Savings & Loan Association in payment of the balance of the existing mortgage; one for $500 to defendant Kogut; one for $6,389.54 to plaintiff; and two checks payable to defendant Gallina, one for $2,800 and one for $1,385.33. Gallina paid Rusin $2,800 in cash immediately thereafter, apparently as a commission for procuring the loan for him. Rusin was also paid $191 for getting the loan by the Supreme Savings & Loan Association. Although plaintiff's deed bore revenue stamps in the amount of $29.70, indicating a consideration of $26,500, the closing statement prepared by defendant Kogut charged plaintiff only $21.45 for revenue stamps, as would pertain to a sale for $19,500.

By virtue of this transaction, Gallina became the owner of the premises without paying out any of his own funds, and also received the mortgage surplus of $4,185.33, of which Rusin was given $2,800; and plaintiff exchanged his ownership of the premises subject to a $7,200 first mortgage, for a check for $6,389.54 and a note and second mortgage for $5,000, subject to a first mortgage of $19,100, neither of which bore any legend that it was a junior encumbrance.

On April 4, 1955, when the first payment on the second mortgage fell due, Gallina failed to pay it, claiming that

plaintiff owed him an additional sum. However, when Gallina learned that plaintiff secured a new lawyer, Gallina immediately offered the payment on the second mortgage, which plaintiff then refused and returned.

On May 5, 1955, plaintiff filed suit alleging that he conveyed the real estate in question to Gallina as a result of undue influence, fraud, inadequate consideration, and as a result of a breach of the confidential relationship, and requesting that the court decree that a constructive trust exists between defendant Vincent J. Gallina and plaintiff, and that Gallina is holding title as trustee *ex maleficio* for the benefit of plaintiff. The complaint also requested that a receiver be appointed and an accounting be made; that plaintiff and defendants deposit all the cash proceeds in connection with the transaction in court; and that a deed be deposited designating plaintiff as grantee, subject only to an amount of money equal to the actual indebtedness existing on February 10, 1955, so that the parties may be restored to the *status quo* as of that date.

Plaintiff thereafter amended the complaint to state that the $5,000 note and mortgage were void, since they did not bear the legend required by the Illinois Securities Act of 1953 that they were junior encumbrances. (Ill. Rev. Stat. 1953, chap. 121½, par. 137.3K.) The court granted plaintiff's request to deposit the securities with the court, and authorized the clerk to surrender the securities to defendants upon payment of $5,000 plus interest, and that such deposit was without prejudice to any of plaintiff's rights or demands in the cause.

Plaintiff further amended the complaint to add Frank Rusin as a defendant, alleging that he, along with defendant Marion Kogut and defendant Vincent J. Gallina, conspired to defraud plaintiff, and prayed that he, as well as the others, be ordered to account to plaintiff apropos the proceeds of the mortgage, and that the costs be taxed against Rusin. A final amendment stated that Frank Rusin

was now the record owner of the premises, since defendant Gallina quitclaimed his interest to Rusin. The pleadings were subsequently modified to note the death and dismissal of defendant Marion Kogut.

Despite defendants' objections, the cause was referred to a master, who recommended denial of defendants' motion for summary judgment in view of the issues of fact involved. After extensive hearings, the master submitted his findings and conclusions, which were confirmed by the court. The court found that the only reasonable inference to be drawn from the facts and circumstances is that a conspiracy existed between Marion Kogut and defendants Frank Rusin and Vincent J. Gallina to induce plaintiff to convey his real estate to defendant Gallina, who was a nominee in the transaction for defendant Frank Rusin, and to permit defendants to obtain the surplus of the first mortgage loan of $19,100 by inducing plaintiff to take back a second mortgage of $5,000 subordinate to the first mortgage. The court further found that the Securities Act had no application; that defendants made no tender to pay the second mortgage until after the hearing on the merits had commenced, which tender was not kept good; and that while the real estate had a fair cash market value of more than $19,500, a sale for that amount was not for a grossly inadequate price. The court thereupon ordered, pursuant to the master's recommendation, that defendants Rusin and Gallina be required to pay to plaintiff the sum of $5,000 with interest, and the costs of litigation.

Defendants have appealed therefrom, urging that plaintiff did not establish fraud or any basis for equitable relief; that the second mortgage is void and therefore not a lien on defendants' property; and that plaintiff is precluded from any relief by his vacillating between rescission and affirmation and should be required to pay the costs. Plaintiff filed a cross appeal, contending that the master's findings, as approved by the court, are correct, except the finding

that the sale price of $19,500 was not grossly inadequate or less than the price plaintiff was willing to accept, and the failure to find that a confidential relationship existed between Kogut and plaintiff, the breach of which warranted the imposition of a constructive trust, rather than a money decree.

In determining the propriety of that decree, we recognize the rule that where a master in chancery has heard the evidence, his findings of fact do not carry the same weight as the verdict of a jury, nor the findings of the chancellor where the witnesses have testified before him; nevertheless, the master's findings are entitled to due weight on review, and, when approved by the chancellor, a reviewing court is not justified in disturbing them unless they are manifestly against the weight of the evidence. *Stowell* v. *Satorius,* 413 Ill. 482, 493; *Staude* v. *Heinlein,* 414 Ill. 11; *Zilvitis* v. *Szczudlo,* 409 Ill. 252.

With reference to the master's findings of fraud in this case, that concept has been deemed to comprise in its general sense anything calculated to deceive, including all acts, omissions and concealments involving a breach of legal or equitable duty, trust or confidence resulting in damage to another. (*Diversey* v. *Johnson,* 93 Ill. 547, 560; *Connolly* v. *Gishwiller,* (7th cir.) 162 F.2d 428, 433, cert. den. U.S. 68 S.C. 166; *Gibbons* v. *Brandt,* (7th cir.) 170 F.2d 385.) There is no general rule for determining what facts will constitute fraud; whether or not it is found depends upon the special facts of each particular case. While fraud is never presumed, a conspiracy, as alleged herein, is rarely susceptible of direct proof, but must, very nearly always from the nature of things, be established by circumstantial evidence and legitimate inferences arising therefrom. (*Commercial Merchants Bank and Trust Co.* v. *Kloth,* 360 Ill. 294, 306.) These inferences depend largely upon the common-sense knowledge of the motives and intentions of men in like circumstances. (*Philadelphia Storage*

*Battery Co.* v. *Kelley-How-Thomson Co.* (8th. cir.) 64 F.2d 834, 837; *Garlick* v. *Imgruet,* 340 Ill. 136, 143.) Thus, fraud may be inferred from the nature of the acts complained of, the individual and collective interest of the alleged conspirators, the situation, the intimacy and relation of the parties at the time of the commission of the acts, and generally all the circumstances preceding and attending the culmination of the claimed conspiracy. (*People* v. *Small,* 319 Ill. 437.) In this connection the court stated in *People* v. *Small,* 319 Ill. 437, at p. 449: "It is seldom that any one act, taken by itself, will establish a conspiracy, but when taken in connection with other acts it may appear clearly that the series of wrongful acts result from concerted and associated action. Considered separately the acts of the conspiracy are rarely of an unequivocally guilty character, and they can be properly estimated only when connected with all the surrounding circumstances."

Therefore, contrary to defendants' approach of isolating and considering separately whether there is a taint of fraud in either the contract, or the amount of the first mortgage, or the fact that Gallina did not use his own money, we must adjudge the transaction in its entirety in the light of all the surrounding circumstances.

In the case at bar, as hereinbefore noted, the record established that Marion Kogut was the only attorney in the transaction; that she purported to act as attorney for plaintiff; that plaintiff put implicit reliance upon her at the time he signed the contract, since he was an illiterate old man with a limited knowledge of English and she spoke the same foreign language he did, and through the years she had filed his income tax returns for him, drafted his will, and assisted in the purchase of the controverted property. Under these circumstances, plaintiff established the existence of a fiduciary relationship by the requisite "clear and convincing proof." ( *Hogg* v. *Eckhardt,* 343 Ill. 246.) In our judgment, therefore, the master and the circuit court

should properly have made a finding of the existence of such a fiduciary relationship between the plaintiff and Marion Kogut.

In analyzing the record further, it appears that the sequence of events—Rusin's preliminary negotiations to purchase the property from plaintiff at Kogut's office, Rusin's prompt procurement of a $19,100 mortgage commitment on the property, his payment of the appraisal fee, and the appearance of his salesman and general messenger, Gallina, at Kogut's office some two weeks later to buy the property for $19,500 (considered along with Gallina's admission that he knew of Rusin's mortgage commitment when he signed the contract, and Gallina's representations to the mortgage company that he was paying $26,500 for the property,) all tend to indicate that defendants Gallina and Rusin planned to induce plaintiff to part with his property for $19,500, even though they knew it had a higher valuation, and to secure the $19,100 mortgage by representing that a higher purchase price was being paid, so that they could enjoy the surplus mortgage proceeds.

Defendant Kogut's awareness and participation in that plan is evident from her deliberate omission in the contract of the amount of the mortgage to be procured; her insistence that plaintiff sign the contract; her duplicity in affixing the revenue stamps to the deed representing a $26,500 consideration, but charging plaintiff only for revenue stamps as for the $19,500 purchase price; and her acceptance for plaintiff of a $5,000 note and second mortgage which omitted the required legend that it was a junior encumbrance and subject to a $19,100 first mortgage.

Defendants' plan was effectuated, and defendants Gallina and Rusin enjoyed the $4,185.33 excess from the new mortgage, unbeknown to plaintiff, and secured the property without putting up any of their own funds.

Defendants' counsel, however, contends that this was merely an advantage not normally granted to one in de-

fendants' position, but not fraud. We are asked to believe that defendant Gallina bought the property entirely independently of defendant Rusin, who, upon learning that his employee bought a building, merely suggested that the employee take advantage of a mortgage commitment the employer had secured a few days before, when he had been interested in the same property.

That interpretation hardly seems consistent with the "common-sense knowledge of the motives and intentions of men" under the foregoing circumstances, or with the further fact that shortly after litigation began, Gallina quitclaimed the property to Rusin, allegedly for some money Gallina owed Rusin.

It is incumbent upon us, therefore, to adjudge whether the transaction, whereby this "advantage" was procured, could be deemed fraudulent. In so doing we recognize that where the existence of a fiduciary relationship is established, as in the instant case, courts will scrutinize such transactions with greater severity, and the duty is upon the beneficiaries to vindicate the bargain from any shadow of suspicion, and to show that it was perfectly fair and reasonable in every respect. (*Addis* v. *Grange,* 358 Ill. 127, 134; *Schrader* v. *Schrader,* 298 Ill. 469; *Krieg* v. *Felgner,* 400 Ill. 113, 121; *Schueler* v. *Blomstrand,* 394 Ill. 600.) Moreover, it is of no consequence whether the conveyance was to the fiduciary or to another. The principle is set forth in Lord Eldon's statement, quoted in the *Addis case* at page 134: "Let the hand receiving it be ever so chaste, yet if it comes through a corrupt channel the obligation of restitution will follow it."

The record shows that pursuant to their plan, defendants, including the fiduciary Marion Kogut, induced plaintiff to part with his property at a price that was $3,000 below even the lowest estimate of defendants' witness Bartel, and some $6,000 below the objective appraisal made by the mortgage company prior to any litigation. While

mere inadequacy of consideration is not ordinarily ground for relief, and standing alone may not be evidence of fraud, where it is accompanied by circumstances of undue influence, or when through ignorance, mental or physical weakness, or by misrepresentation or stress of financial circumstances, the grantor is led into an improvident bargain, proof of inadequacy of consideration becomes evidence of fraud. *Logue* v. *Von Almen*, 379 Ill. 208.

In the instant case, many, if not all, of these additional factors are present. There was evidence of plaintiff's financial stress, since he had recently been hospitalized and his pension was his only source of income; there was considerable evidence of his lack of understanding English, much less the legal significance of a second mortgage; and there is evidence that he was afraid to sign the papers, but did so only on defendant Marion Kogut's reassurance and in reliance on her representations that the property was going down in value, made at a time when she, as a licensed real-estate broker, should have known of the higher valuation of the property, particularly since it could command a $19,100 mortgage.

Under those circumstances, we differ from the master, and conclude that not only was the consideration grossly inadequate, but that the inadequacy was the result of defendants' fraudulent representations, and constituted grounds for rescission. *Rogers* v. *Barton*, 386 Ill. 244, 250.

In addition, the aforementioned deliberate omission in the contract of the amount of the mortgage to be secured; the omission of any notation on the note and second mortgage that they were junior to the $19,100 first mortgage; and the duplicity in connection with the revenue stamps, were all acts designed to conceal from plaintiff the facts that defendants were getting a $19,100 mortgage and that his property had a far greater valuation than they represented, and to keep him from realizing the doubtful value of his second mortgage if there was ever a necessity for

foreclosure. This conduct, therefore, constituted further evidence of fraud, as well as a breach of fiduciary duty.

As appropriately stated in *Logue* v. *Von Almen,* 379 Ill. 208, at page 220: "* * * there was not present in the transaction * * * that fair and open dealing which equity demands where the parties engaged in the transaction do not stand upon an equal basis. Any one of the several conditions mentioned, standing alone, would not be sufficient, but when all are considered together they establish a case for equitable relief." In the light of the foregoing facts and circumstances appearing in the record, we are of the opinion that the master's conclusions, concurred in by the court, that defendants conspired to defraud plaintiff of his property were amply supported by the evidence.

Defendants, however, advance the further argument that plaintiff is precluded from relief because of his vacillation between rescission and affirmation of the contract. We recognize the principle expounded in *Wollenberger* v. *Hoover,* 346 Ill. 511, cited by defendants, that an election to affirm a contract of sale after the discovery of fraud, is entirely inconsistent with an election to rescind the transaction for such fraud. In that case, the complainant, with full knowledge of the fraud perpetrated upon him, filed a bill to enforce a lien for the purchase money due him on the sale of his interest in certain real estate, and the court held that he could not thereafter rescind the sale.

In sharp contrast, plaintiff herein unequivocally sought to have the court declare that a constructive trust exists on the ground of defendants' fraud and breach of confidential relationship. The complaint specifically prayed that the court declare by its decree that defendant Rusin is holding title to the premises in question as a trustee *ex maleficio* for the benefit of plaintiff, and sought incidental relief of an accounting so that the parties could be restored to the *status quo* at the time of the closing of the deal. While the amendment did state that the note and second

mortgage given by defendant Gallina were void because they violated the Securities Act by omitting the requisite legend that they were subject to a first mortgage, the purport of the amendment was to allege additional fraudulent conduct on the part of defendants, and in no way constituted a ratification of the fraudulent transaction, or a willingness to accept the money due on the purchase in lieu of rescission. On the contrary, the order of the court, giving leave to deposit the securities, specifically stated that the deposit is made without prejudice to any of plaintiff's rights or claims in the cause.

In fact, under the *Wollenberger case,* and *Sluka* v. *Bielicki,* 335 Ill. 202, 210, also cited by defendants, any such subsequent action by plaintiff could not be deemed effective to change the original election made by plaintiff, for the bar arises as soon as the choice is made, and becomes full and absolute against the other remedy at the time of the filing of the claim.

Defendants contend further that since the plaintiff's amended complaint elected to declare that the Gallina note and second mortgage were void because of their omission of the requisite legend that they were junior encumbrances, in violation of the Illinois Securities Act, consequently that second mortgage no longer constituted a lien on defendants Rusin's property, and he was no longer obligated to pay plaintiff the $5,000. We cannot accept such specious reasoning. It not only enables those who give void securities in payment to benefit from violating the law, but is without a scintilla of support in the cases.

We find nothing in the *Wollenberger case* or any other case cited by defendants which suggests that a party who executes void securities is thereby relieved of the obligation of payment, if the other party recognizes their invalidity, as defendants' counsel asserts. In justification of this novel theory of law, counsel states: "If this may, at first blush, appear harsh, it seems to us that it is not an unreasonable

106

penalty to pay for the making of wild and unsupported charges of fraud and conspiracy as was done here." In our judgment, if there were any wild claims in this case, they were the protestations of injured innocence on the part of defendants and their counsel.

On the basis of this analysis, inasmuch as the record clearly establishes defendants' conspiracy to defraud plaintiff, and the abuse of the fiduciary relationship by the deceased Marion Kogut, a constructive trust should properly have been declared by the trial court (*Kester* v. *Crilly,* 405 Ill. 425, 431; *Addis* v. *Grange,* 358 Ill. 127, 134,) in lieu of the money decree entered herein. Defendant Rusin, the present record title holder, should be deemed to be holding the property as trustee *ex maleficio* for the benefit of plaintiff, and the parties should be restored to the *status quo* as of February 10, 1955, immediately preceding the fraudulent transaction. The cause, therefore, must be remanded to the trial court for the sole purpose of computing the amounts due and owing the parties in order to effectuate this result. Inasmuch as we find no error in the order of the trial court taxing defendants for all costs in this litigation, that portion of the decree is affirmed.

*Affirmed in part and reversed in part and remanded, with directions.*