STANLEY M. VERMEIL, Plaintiff-Appellee, v. JEFFERSON TRUST AND SAVINGS BANK OF PEORIA, Defendant-Appellant.

Third District No. 3—88—0175

Opinion filed November 10, 1988.—Modified on denial of rehearing January 3, 1989.

558

Strodel, Kingery, Durree & Associates, of Peoria, and H. Thomas Coghill, of Coghill & Goodspeed, P.C., of Denver, Colorado (Steven A. Wakeman, of counsel), for appellant.

Baymiller, Christison & Radley, of Peoria (David B. Radley, of counsel), for appellee.

PRESIDING JUSTICE STOUDER delivered the opinion of the court:

Jefferson Trust and Savings Bank of Peoria (the bank) appeals from the judgment entered for Stanley M. Vermeil (Vermeil) on his contract claim, from the dismissal of counts I through III of its counterclaim, from the judgment on the pleadings of counts IV through VI of its counterclaim, and from the judgment striking with prejudice its first and second affirmative defenses. In 1976 the bank entered into a contract with the plaintiff-counterdefendant, Vermeil, who at that time was the president and chairman of the board of the bank, whereby the bank agreed to pay $833 per month to Vermeil upon his retirement. Vermeil subsequently retired, and in April 1981, the bank stopped paying Vermeil the agreed-upon benefits. Vermeil thereupon brought suit against the bank. The bank responded by filing a counterclaim against Vermeil's contract claim. The counterclaim alleges as follows.

In 1979 the bank made two loans totalling $600,000 to Heartland Investments, Inc. (Heartland). Heartland requested the loans for the purpose of remodeling a discotheque known as the Poison Apple, which Heartland owned and operated in Peoria. At the time the loans were made, Vermeil was both an officer, director and shareholder of Heartland as well as a director of the bank and member of the bank's loan committee. Vermeil participated in efforts to obtain both loans from the bank.

The first of the two loans was for $250,000. Heartland's loan application for the $250,000 was approved based upon representations that the funds would be used for remodeling the discotheque, that the bank would obtain a security interest in the furniture, fixtures and equipment, and that the loan would be guaranteed by the principal shareholders of Heartland. Though the loan was disbursed in reliance on these representations, Vermeil did not personally guarantee the loan, nor did he obtain personal guarantees of the loan from any of the other shareholders of Heartland, nor did he notify the bank that the loan was so disbursed.

Before the second loan was issued, Vermeil and his son met with

James Rossnagel, an employee and officer of the bank, on August 15, 1979, to discuss financial arrangements regarding the additional loan. At that meeting Rossnagel indicated that the bank would consider loaning Heartland the additional $350,000 if the Small Business Administration (SBA) and Vermeil would guarantee the loan.

As of September 1979, Heartland owed its creditors and contractors $500,000 for the renovation work on the discotheque. In proceeding to obtain the additional loan for Heartland, Vermeil did not disclose to the bank the extent of Heartland's liability. Moreover, Vermeil knew that Heartland was not financially prepared to repay an additional loan.

In October 1979, Vermeil, his son, and others provided personal financial statements and SBA statements of personal history to the bank, pursuant to a requirement that all shareholders of Heartland guarantee the proposed loan. Subsequently, Vermeil and his son met again with Rossnagel to finalize negotiations for the loan. At the meeting, Rossnagel and Vermeil orally agreed that Vermeil would personally guarantee the prior $250,000 loan and that the other shareholders, including Vermeil's son and the SBA, would guarantee the $350,000 loan.

In November 1979, the SBA approved Heartland's loan application, and the first $100,000 of the $350,000 was issued. Contrary to the bank's loan policy, however, the disbursement was not presented to the bank's loan committee for approval. Not only was Vermeil aware that the second loan was issued contrary to bank policy, but he also did not provide his written guarantee of the $250,000 loan as he had earlier agreed. Subsequently, the remainder of the $350,000 was disbursed, also without proper approval.

In August of 1980, Heartland defaulted on both of its loans to the bank. The SBA purchased its 90% guaranteed portion of the $350,000 loan, but as of February - 25, 1985, Heartland owed the bank $221,081.39 in principal, plus accrued interest on the $250,000 loan, and $30,977.60 in principal, plus accrued interest on its 10% share of the $350,000 loan.

In an attempt to recoup its losses, the new bank president, Lester Cassing, asked Vermeil to sign a guarantee of the $250,000 loan. When Vermeil refused, the bank began, as of April 1981, to apply Vermeil's $833.33 monthly benefits payment toward the debt. Vermeil then brought his breach of contract action against the bank, and the bank responded with its third amended six-count counterclaim.

Count I of the counterclaim alleges that as a director of the bank, Vermeil breached his fiduciary duty to exercise ordinary care with re-

spect to the bank, count II alleges that Vermeil breached his fiduciary duty of loyalty to the bank, count III alleges negligence, count IV alleges constructive fraud, and counts V and VI allege that Vermeil is estopped to assert the Statute of Frauds (Ill. Rev. Stat. 1985, ch. 59, par. 1 *et seq.*) with respect to his promise to guarantee the $250,000 loan because the bank relied on his promise to its detriment.

On Vermeil's motion, the trial court dismissed counts I through III of the bank's counterclaim. Thereafter, on Vermeil's motion and in his favor, the court entered judgment on the pleadings on the remaining counts of the bank's counterclaim. Pursuant to a joint stipulation for entry of judgment, the parties agreed that it would be unnecessary to go to trial on Vermeil's contract claim since all of the bank's claims and defenses were either dismissed or stricken with prejudice. Both parties reserved their respective rights to appeal. Thereupon judgment was entered for Vermeil on his contract claim. The bank then brought this appeal.

█ In reviewing the grant of a motion to dismiss a counterclaim, we must determine whether in the light most favorable to the nonmovant the facts alleged, together with the reasonable inferences therefrom, demonstrate any possibility of recovery for the nonmovant. (*Richmond v. Hahn* (1985), 134 Ill. App. 3d 947, 948, 481 N.E.2d 943, 944; *Manisco v. Marseilles Fire Protection District* (1985), 132 Ill. App. 3d 390, 392, 477 N.E.2d 534, 535; *Batteast v. Saint Bernard's Hospital* (1985), 134 Ill. App. 3d 843, 848, 480 N.E.2d 1304, 1307.) In this case, the first three counts of the bank's counterclaim, dismissed for their legal insufficiency, relate to Vermeil's alleged abuse of his position as director and member of the loan committee of the bank. The first issue, then, is whether any of the facts alleged in these three counts state a cause of action.

█ It is well established that a director or officer of a corporation occupies a fiduciary or trust relationship with the corporation. (See *Shlensky v. South Parkway Building Corp.* (1960), 19 Ill. 2d 268, 278, 166 N.E.2d 793, 799.) The supreme court of Illinois has stated that

> "directors of a corporation are trustees of its business and property for the collective body of stockholders in respect to such business. They are subject to the general rule, in regard to trusts and trustees, that they cannot, in their dealings with the business or property of the trust, use their relation to it for their own personal gain. It is their duty to administer the corporate affairs for the common benefit of all the stockholders, and exercise their best care, skill, and judgment in the management of the corporate business solely in the interest of the cor-

poration. The stockholders are entitled to the utmost fidelity of the directors to the interest of the stockholders. It is a breach of duty for the directors to place themselves in a position where their personal interests would prevent them from acting for the best interests of those they represent. \*\*\* While a director is not disqualified from dealing with the corporation \*\*\*, he must act fairly and be free from all fraud or unfair conduct, his transactions will be subjected to the closest scrutiny, and, if not conducted with the utmost fairness, to the end that the corporation shall have received full value, they will be set aside." *Dixmoor Golf Club, Inc. v. Evans* (1927), 325 Ill. 612, 616, 156 N.E. 785, 787-88.

■ In determining whether a director has dealt unfairly with his corporation, the court may consider "whether there was a detriment to the corporation as a result of the transaction; \*\*\* and whether there was full disclosure—although neither disclosure nor shareholder assent can convert a dishonest transaction into a fair one." (*Shlensky*, 19 Ill. 2d at 283, 166 N.E.2d at 801-02.) When the transaction is challenged, the burden is on the directors involved in the transaction to overcome "the presumption against validity of the transaction by showing its fairness and propriety." 19 Ill. 2d at 280, 166 N.E.2d at 800-01.

■ In view of these principles, we must conclude that the facts alleged in the bank's counterclaim are sufficient to constitute a cause of action against Vermeil for all three of the claims asserted in counts I through III. The bank alleges that Vermeil was at the time of the issuance of the loans a director of the bank. This allegation is sufficient to establish the duties Vermeil owed to the bank, since, as we have discussed above, a director must be loyal to his principal, must not neglect the financial affairs of his principal, and must exercise his best care and judgment on behalf of his principal. The bank also alleges that Vermeil, acting on behalf of Heartland, induced the bank to disburse loans to Heartland by misrepresenting Heartland's ability to repay the loans and by representing that he would obtain personal guarantees, including his own, when he did not, in fact, provide such guarantees. The bank further alleges that contrary to the bank's loan policy, of which Vermeil was aware, Vermeil procured the second loan without seeking approval of the bank's loan committee. These allegations are sufficient to show that Vermeil breached his duties as director to the bank. Finally, the bank alleges that as a result of Vermeil's misrepresentations, the bank disbursed the loans, on which Heartland subsequently defaulted, leaving the bank with a loss in excess of

$250,000 plus interest. These allegations are sufficient to establish that Vermeil's breach of his duties to the bank was the proximate cause of the bank's loss. On similar facts a Federal district court affirmed a bankruptcy court's judgment that a director's inducing his lending corporation to disburse a loan to another corporation of which he was a director and stockholder constituted a breach of his fiduciary duties to the lender. See *In re Illinois Valley Acceptance Corp.* (C.D. Ill. 1982), 531 F. Supp. 737; see also *First National Bank v. Hall* (1977), 143 Ga. App. 300, 238 S.E.2d 284 (holding that complaint against bank's officer alleging, among other things, that loans had been made contrary to the policies of the board of directors and without their knowledge, but with the officer's knowledge, stated a claim for relief).

■ Vermeil asserts that counts I through III of the bank's counterclaim are insufficient for several reasons; however, we note that Vermeil has cited no authority in support of any of his reasons, and we conclude, moreover, that no such authority exists. Vermeil also asserts that Rossnagel's knowledge is imputed to the bank and that Vermeil could not, therefore, be charged with concealing facts from the bank. However, the argument that an agent's knowledge is imputed to his principal is available only to third parties suing the principal. (See *Harris Trust & Savings Bank v. Joanna-Western Mills Co.* (1977), 53 Ill. App. 3d 542, 550, 368 N.E.2d 629, 635.) Additionally, Vermeil's argument assumes that Rossnagel was acting in favor of the bank in failing to report another director's breach of fiduciary duty to the bank. On the contrary, the allegations suggest that Rossnagel, having knowledge of Vermeil's activities, was acting contrary to the best interests of the bank. (See *Illinois Valley*, 531 F. Supp. at 740-41 (holding that one officer can be equally liable for another officer's breach if he does not inform the corporation of the breaching officer's activities).) Moreover, raising such a defense suggests Vermeil's concession that the bank has otherwise stated a valid cause of action. For these reasons we conclude that the first three counts of the bank's counterclaim do state a cause of action. Accordingly, we hold that the trial court erred in dismissing for their legal insufficiency counts I through III of the bank's counterclaim.

■ The remaining counts of the bank's counterclaim were disposed of in the granting of Vermeil's motion for judgment on the pleadings. A motion for judgment on the pleadings admits the facts well pleaded by the opposite party and seeks judgment on the questions of law raised by the pleadings. (*Walker v. State Board of Elections* (1976), 65 Ill. 2d 543, 552-53, 359 N.E.2d 113, 117.) The ques-

tion as to the counts dismissed by the judgment on the pleadings, then, is whether, as a matter of law, the bank could not succeed on the claims presented in the counts.

Count IV of the counterclaim alleges constructive fraud. Generally, fraud means "anything calculated to deceive, including all acts, omissions and concealments involving a breach of legal or equitable duty, trust or confidence resulting in damage to another." (*Majewski v. Gallina* (1959), 17 Ill. 2d 92, 99, 160 N.E.2d 783, 788.) Whether fraud exists depends upon the facts of the particular case. (*Majewski*, 17 Ill. 2d 92, 166 N.E.2d 783.) However, where there is a breach of a legal or equitable duty arising out of a fiduciary relationship, a presumption of fraud arises. (*Obermaier v. Obermaier* (1984), 128 Ill. App. 3d 602, 607, 470 N.E.2d 1047, 1051.) This type of fraud is called "constructive fraud." (*Gary-Wheaton Bank v. Burt* (1982), 104 Ill. App. 3d 767, 773, 433 N.E.2d 315, 322.) Unlike actual fraud, constructive fraud requires neither actual dishonesty nor intent to deceive. *Beaton & Associates, Ltd. v. Joslyn Manufacturing & Supply Co.* (1987), 159 Ill. App. 3d 834, 844, 512 N.E.2d 1286, 1291.

Vermeil asserts that the bank has failed to allege most of the elements of fraud and that count IV should have been dismissed with the first three counts. More specifically, Vermeil argues that the bank could not prove that it reasonably relied on Vermeil's misrepresentation of fact since it would have to prove that it had no knowledge of the truth and no means of ascertaining the truth by the exercise of ordinary care. Vermeil then argues that because Rossnagel knew of Vermeil's actions, the bank cannot possibly argue that it had no knowledge of the misrepresentation since Rossnagel's knowledge is imputed to the bank.

As we have noted above, however, the argument that knowledge of a director is imputed to the corporation is available only to third parties. (*Harris Trust,* 53 Ill. App. 3d at 550, 368 N.E.2d at 635.) Moreover, one agent's failure to disclose another agent's breach of fiduciary duty may place the silent agent in breach of his duties to the principal as well. (See *Illinois Valley,* 531 F. Supp. at 740-41.) Thus, Rossnagel's knowledge of Vermeil's activities cannot as a matter of law be imputed to the bank. To the extent that it held to the contrary, the trial court's judgment as to this count must be reversed and the cause remanded to determine whether the bank can otherwise prove its allegations.

Counts V and VI of the bank's counterclaim were also disposed of by the grant of Vermeil's motion for judgment on the pleadings. In these counts the bank argues that because it detrimentally relied on

Vermeil's promise to guarantee the $250,000 loan, Vermeil is estopped from raising the defense of the Statute of Frauds. Vermeil, on the other hand, argues that permitting the bank to sidestep the Statute of Frauds by claiming detrimental reliance and constructive fraud would emasculate the Statute of Frauds defense.

■■ In Illinois, courts will not permit a party who has perpetrated a fraud to raise the defense of the Statute of Frauds. (*Grundy County National Bank v. Westfall* (1973), 13 Ill. App. 3d 839, 845, 301 N.E.2d 28, 32.) Moreover, the court in *Grundy County* suggests that advancement of funds made in reliance on an oral contract of guarantee may constitute substantial performance sufficient to take the contract out of the Statute of Frauds. (*Grundy County*, 13 Ill. App. 3d 839, 301 N.E.2d 28; contra *Brown & Shinitsky Chartered v. Dentinger* (1983), 118 Ill. App. 3d 517, 519-20, 455 N.E.2d 128, 129-30.) For purposes of this determination, we hold simply that before Vermeil can raise the Statute of Frauds defense, he must first succeed in his defense against the allegation that he committed constructive fraud upon the bank. Because we have remanded the constructive fraud count, we also, therefore, reverse and remand the grant of judgment on the pleadings as to counts V and VI of the bank's counterclaim.

■■ Vermeil asserts that even if the bank's counterclaim were allowed, the bank should not be permitted to offset his action under the retirement benefits contract since the bank in the contract's spendthrift clause agreed that the benefits would be exempt from creditors. Although the spendthrift clause was mentioned in Vermeil's motion to strike the bank's affirmative defenses, the existence of the provision could not have been the basis for the trial court's granting of the motion. The bank's affirmative defenses alleged that the deferred compensation contract was improperly procured by Vermeil. The existence of a spendthrift provision in the contract is immaterial to whether the contract was or was not improperly procured. Therefore, striking the affirmative defense did not and could not have decided the merits of the spendthrift provision issue. Consequently, we are not inclined to review the matter in this appeal. See *Kravis v. Smith Marine, Inc.* (1975), 60 Ill. 2d 141, 147, 324 N.E.2d 417, 420.

The bank also argues that the trial court erred in striking its first and second affirmative defenses. Both defenses allege that Vermeil, before coming to the bank, was employed by Keystone Consolidated Industries, Inc. (Keystone). From 1970 through December 17, 1979, Keystone owned 50% of the authorized and issued stock of the bank. In consideration for Vermeil's leaving Keystone and taking the posi-

tion as president of the bank, Keystone offered to supplement Vermeil's bank salary with a pension. Subsequently, Keystone and Vermeil, in an attempt to relieve Keystone of its pension obligation to Vermeil, improperly induced the bank to provide Vermeil with a special retirement plan which he otherwise would not have received. The bank argues that this retirement plan, which is the subject of Vermeil's contract action, having been procured through the influence of a controlling shareholder, is illegal under Illinois law.

 A motion to strike an affirmative defense admits all well-pleaded facts constituting the defense and raises only a question of law as to the legal sufficiency of the pleading. (*Federated Equipment & Supply Co. v. Miro Mold & Duplicating Corp.* (1988), 166 Ill. App. 3d 670, 677, 520 N.E.2d 80, 85.) The issue here, then, is whether the bank's affirmative defense alleges facts sufficient to constitute a legally cognizable defense.

In support of its affirmative defense, the bank relies exclusively on *Miller & Pardee, Inc. v. Pardee* (1926), 242 Ill. App. 233. In *Miller* the corporation sought to invalidate as illegal a unanimous resolution passed by the board of directors whereby the Pardees, two of the corporation's five directors, would receive certain salaries. The court considered *McNulta v. Corn Belt Bank* (1897), 164 Ill. 427, 45 N.E. 954, wherein the Supreme Court of Illinois held that a corporate officer's attempt by inducement or by his casting an essential vote to procure for himself a salary or compensation renders that payment to him illegal. The court in *Miller* concluded, however, that since the Pardees' votes were not essential to passing the resolution, the resolution granting the Pardees compensation was not illegal. (*Miller*, 242 Ill. App. at 263.) The converse of the rule in *McNulta* is that at least where the director's vote is not necessary for the corporate act to be taken, such action is valid.

 We have reviewed the bank's first and second affirmative defenses and conclude that they do not allege facts sufficient to establish that the agreement to grant retirement benefits to Vermeil is invalid. Both defenses allege that Vermeil improperly induced the bank to provide the retirement benefits to Vermeil. The defenses do not, however, state facts sufficient to permit the trial court to determine whether it could be proved that Vermeil's actions were improper. The allegations presented are conclusory and as such are appropriately disposed of by a motion to strike. (See *Knox College v. Celotex Corp.* (1981), 88 Ill. 2d 407, 426-27, 430 N.E.2d 976, 985-86.) The trial court was correct, therefore, in granting Vermeil's motion to strike the bank's first and second affirmative defenses.

For these reasons the judgment of the circuit court of Peoria County striking the affirmative defenses is affirmed. All other aspects of the judgment are reversed and remanded for proceedings consistent with this opinion.

Affirmed in part; reversed in part and remanded.

HEIPLE and SCOTT, JJ., concur.