INDEX FUTURES GROUP, INC., Plaintiff-Appellee, v. HARRY ROSS, Defendant-Appellant.

First District (2nd Division)   No. 1—88—3737

Opinion filed May 22, 1990.—Rehearing denied July 11, 1990.

---

John E. Dolkart, and Tenney & Bentley, both of Chicago (Michael J. Childress, of counsel), for appellant.

W. Scott Porterfield, of Fishman & Merrick, P.C., of Chicago, for appellee.

JUSTICE SCARIANO delivered the opinion of the court:

This action was brought to recover a deficit in defendant's commodity trading account by plaintiff broker. Defendant filed an answer and an amended answer containing affirmative defenses and counterclaims which admitted that there was a deficit in his account, but denied liability and sought additional damages based on allegations that plaintiff was grossly negligent, had engaged in willful misconduct, committed fraud, and breached its fiduciary duty owed to defendant. The trial court struck and dismissed defendant's affirmative defenses and counterclaims, and granted summary judgment to plaintiff. We affirm.

Plaintiff Index Futures Group, Inc. (Index), is a commodities brokerage firm located in Chicago and a member of the principal commodities exchanges in the United States. Defendant Harry Ross, a resident of California, maintained a commodity trading account with Index from April 1985 through January 1986. Ross granted a power of attorney to James Reed and Symanco, Inc., an investment advisory firm located in California in which Reed was the principal, to trade his account.[1]

The rights and duties of both Index and Ross are governed by their contractual agreement, which Ross executed on April 6, 1985, and which contained the following provisions:

"1. Governing Rules and Regulations.

All transactions executed under this Agreement for the Accounts shall be governed by applicable laws and rules enacted

---

[1]Symanco and Reed, both originally named as defendants in a counterclaim and third-party complaint filed by Ross, are used interchangeably in this opinion. The disposition of this complaint is not at issue here, and neither Symanco nor Reed is a party to this appeal.

by the exchange and clearing organization, if any, where such transactions are executed, by the applicable self-regulatory organization and by applicable federal and state law and regulations. ***

2. Customer's Orders and Delegation of Responsibilities.
***

The Company [Index] shall not be responsible for any losses related to the Accounts and incurred as a result of other than its own gross negligence or willful misconduct. Accordingly, the Company shall not be responsible for any loss or delay in execution arising from, but not limited to, faulty order transmission and communication, fluctuations in currency values, inability to communicate with Customer, or other causes beyond the Company's control. Except as required by applicable law or regulation, the Company shall not be required to inquire into the circumstances surrounding a transaction it may have with Customer. Any inquiry undertaken by the Company will not result in the imposition of additional responsibilities not expressly agreed to by the Company in this Agreement.
* * *

7. Indemnification

Customer acknowledges and agrees that the Company shall not be responsible to Customer for any losses resulting from conduct or advice (including, but not limited to, errors and negligence) of any broker-dealer, futures commission merchant, introducing broker, commodity trading advisor or other person or entity that introduces Customer to the Company or has authority over trading in the Accounts. Customer acknowledges that the Company has no responsibility to supervise the activities of any such person or entity, and agrees to indemnify the Company for any loss, liability, or damage (including attorneys' fees) incurred by the Company as a result of actions taken or not taken by such person or entity."

Pursuant to this last clause, any daily losses accruing in a commodities trading account are paid initially to the futures exchange clearing house by the brokerage firm, which then seeks compensation from its customer based on the indemnification provisions set forth above, as limited by the terms of paragraph 2, also set forth above.

As previously noted, Ross engaged the services of Symanco, Inc., headed by James Reed, as his commodity trading advisor, and signed an agreement giving it the authority to trade for his account. Throughout the time period relevant to this case, Symanco traded for

only four customers (including Ross), all of whom executed customer agreements with Index and granted Symanco trading authority over their accounts. At the request of Symanco, Index made arrangements which permitted Reed to have direct telephone access to order clerks employed by Great American Trading Company located on the floor of Commodity Exchange, Inc. (Comex), a New York commodity exchange. Reed was not required to place his orders first with Index personnel who would then transmit them to Comex, as was normally the practice; moreover, Reed always placed them as block orders, which did not distinguish whom the order was for, nor did it list individual customer account numbers. After the close of the market each day, he would direct Index to assign newly acquired futures contracts to a customer's account number based on the equity in that customer's account as of the prior day's close of business.

In April 1985, Ross placed a $30,500 initial investment in his trading account, which then earned over 24% profit by the end of the year. At the close of trading on January 8, 1986, defendant's account showed 14 open futures contracts, was fully margined, and had a total equity balance of $26,646. On January 9, pursuant to his trading system, Reed purchased a total of 400 short silver futures contracts for his four customers. The market refused to cooperate and moved drastically higher. Reed then called in an order to purchase 1,000 long futures contracts, attempting to take advantage of the rising prices for his clients, but the order was rejected by the Great American telephone clerk on the floor of the exchange. After the clerk also rejected his request to purchase 500 long futures contracts, Reed ordered him to liquidate the entire Symanco position, and this was done the same day at a loss of nearly $500,000. The record does not indicate why the orders were rejected, although Reed testified at his deposition that his orders had always been accepted in the past.

Based on the equity in Ross' account as of the prior day, $119,400 of the total loss was allocated against him, resulting in a net deficit in his account of $92,754. Because Reed was distraught over the loss, and was unable to calculate manually how many contracts should have been apportioned to each of his four customers, as had been his past practice, he advised Index of his system and had it perform the computation.

After Ross refused its demands for payment, Index filed its complaint for breach of contract. In response, Ross pleaded affirmative defenses and counterclaims charging Index with breach of contract, gross negligence and willful misconduct, common law fraud, and breach of fiduciary duty. These allegations were based on his asser-

tions that Index accepted block orders from Reed, that Index permitted Reed to trade Ross' account despite the lack of sufficient funds for margin, and that Index permitted Reed to place orders directly to the floor of Comex and allocated a portion of the trades placed in the block orders to Ross' account.

The trial judge rejected Ross' arguments, struck and dismissed his "amended answer and counterclaim [*sic*]," and entered summary judgment in favor of Index, holding that Ross had not demonstrated that Index had breached any duty owed to Ross. The judge reasoned that Index did not owe Ross a duty to refrain from accepting block orders so long as the trades were fairly allocated, and that Index did not owe Ross a duty to refuse Reed's orders without requiring additional margin or to otherwise supervise Symanco or Reed. This appeal followed.

We affirm.

I

On appeal, Ross argues that Index breached a duty emanating from three distinct sources: a contractual duty, a duty based on negligence concepts, and a duty to refrain from fraud and self-dealing. Ross' contractual duty argument relies on paragraph 1 of the Index customer agreement, more fully set forth above, which requires the parties to abide by all applicable laws, agency regulations, and other industry rules. Ross contends that Index violated regulations promulgated by the Commodity Futures Trading Commission (CFTC or Commission), exchange rules, and rules of the National Futures Association (NFA). More specifically, he asserts that block orders such as those placed here by Reed violated CFTC Regulation 1.35 (17 C.F.R. §1.35 (1989)), Comex Rules 4.88 and 5.13, and NFA Compliance Rule 2—4. He further alleges that Index violated Comex Rule 6.05(a), which prohibits members from carrying undermargined accounts. Since paragraph 1 bound Index to comply with all applicable rules, laws, and regulations, Ross argues that these violations constitute a breach of contract sufficient to relieve Ross of his obligation to indemnify Index and sufficient to support his counterclaims.

We agree that paragraph 1 imposes additional contractual duties on Index (*Keehner v. A.E. Staley Manufacturing Co.* (1977), 50 Ill. App. 3d 258, 365 N.E.2d 275; see also *Iowa Grain v. Farmers Grain & Feed Co.* (Iowa 1980), 293 N.W.2d 22); however, we do not find Index has breached any of these duties. CFTC Regulation 1.35 provides, "Each futures commission merchant and each introducing broker receiving a customer's or option customer's order shall immediately

upon receipt thereof prepare a written record of such order, including the account identification and order number." (17 C.F.R. §1.35(a—1) (1989).) Ross relies heavily on a CFTC decision in which the administrative law judge (ALJ) imposed liability upon a futures commission merchant for permitting block trading in violation of Regulation 1.35, despite the fact that the claimant did not demonstrate that he received unfavorable treatment in the allocation of the trades. *Stiller v. Shearson Loeb Rhoades, Inc.* (CFTC 1983), [1980-82 Transfer Binder] Comm. Fut. L. Rep. (CCH) par. 21,219 (initial determination).

Ross' reliance on this decision is unwarranted because the ALJ's decision was vacated by the CFTC later that year. (*Stiller v. Shearson Loeb Rhoades, Inc.* (CFTC 1983), [1982-84 Transfer Binder] Comm. Fut. L. Rep. (CCH) par. 21,780 (Comm'n review).) In vacating the ALJ's decision, the Commission noted that the violation of Regulation 1.35's prohibition against block trades did not entitle the claimant to damages because he did not show a preferential system of allocation, and any losses he sustained were therefore not proximately caused by the trades. The case was remanded for further proceedings to determine damages. The Commission again reviewed the ALJ's disposition of the case in 1985 and reaffirmed that the complainant had failed to establish that a violation of Regulation 1.35 was the proximate cause of his losses. *Stiller v. Shearson Loeb Rhoades, Inc.* (CFTC 1985), [1984-86 Transfer Binder] Comm. Fut. L. Rep. (CCH) par. 22,663 (Comm'n review). See also *Maloley v. R.J. O'Brien & Associates* (CFTC 1984), [1984-86 Transfer Binder] Comm. Fut. L. Rep. (CCH) par. 22,366 (initial determination), *rev'd on other grounds* (CFTC 1986), [1986-87 Transfer Binder] Comm. Fut. L. Rep. (CCH) par. 23,012 (Comm'n review); compare *Parciasepe v. Shearson, Hayden, Stone, Inc.* (CFTC 1982), [1980-82 Transfer Binder] Comm. Fut. L. Rep. (CCH) par. 21,461 (initial determination), *aff'd in part & rev'd in part* (CFTC 1985), [1984-86 Transfer Binder] Comm. Fut. L. Rep. par. 22,464 (Comm'n review) (violation of Regulation 1.35 found, less clear showing of impartial allocation method than was made in this case).

■ Here, the record indicates, and Ross does not dispute, that the futures contracts purchased pursuant to the block orders were apportioned among the four Symanco customers in a completely impartial manner. The 400 contracts purchased were allocated in proportion to the number of open positions held by each customer prior to the execution of the order. Based on this evidence, we conclude that any violation of CFTC Regulation 1.35(a—1) was not the proximate cause of his losses and could not give rise to liability under paragraph 1 of

the customer agreement; nor do we perceive any reason as to why the same rationale should not apply to the analogous Comex and NFA rules.

■ Moreover, while Comex rules prohibit a member from carrying undermargined positions, Rule 6.05(a) states, "[a] member or member firm may use its discretion in permitting a customer not to deposit margin on a futures contract or open position which is both established and closed out on the same business day." The 400 futures contracts at issue in this case were all purchased and closed out on January 9, 1986. Consequently, Index's decision to allow Reed to trade without requiring additional margin was not a violation of Comex margin rules.

Since Ross has not shown any actionable failure to comply with any applicable laws, CTFC regulations, NFA rules, or Comex rules, his argument that Index has breached paragraph 1 of the customer agreement must be rejected.

II

We turn next to an analysis of Ross' claim that Index breached a negligence-based duty. As a threshold matter, the fact that Ross attempts to characterize his negligence claims as a breach of Index's fiduciary duty of care does not mitigate from their true nature and does not allow Ross to attempt a Northwest Passage around the agreement between the parties requiring indemnification absent a showing of gross negligence. The same principles control liability under either theory. (*Fustock v. Conticommodity Services, Inc.* (S.D.N.Y. 1985), 618 F. Supp. 1082, 1085; see also *In re Estate of Pirie* (1986), 141 Ill. App. 3d 750, 492 N.E.2d 884 (an executor owes a fiduciary duty to use the skill and diligence of an ordinary prudent person in conducting similar business for his or her own benefit); Restatement (Second) of Agency §379 comment *c.* (1958).) However, since we find that, as a matter of law, Index did not breach any duty owed to Ross, we need not address Ross' contention that Index committed negligent acts rising to the level of gross negligence.

■ The duty of care owed by a broker carrying a nondiscretionary account for a customer is an exceedingly narrow one, consisting at most of a duty to properly carry out transactions ordered by the customer. (*Anspacher & Associates, Inc. v. Henderson* (7th Cir. 1988), 854 F.2d 941; *Refco, Inc. v. Troika Investment, Ltd.* (N.D. Ill. 1988), 702 F. Supp. 684.) Thus, with respect to such accounts, a broker owes its customers a duty of care in connection with the performance of the functions of a futures commission merchant as described in 17

476

C.F.R. §1.3(p) (1989)—taking orders, executing trades, and dealing with customer funds. *Sherman v. Sokoloff* (S.D.N.Y. 1983), 570 F. Supp. 1266, 1269 n.10; see also *Martin v. Heinold Commodities, Inc.* (1987), 117 Ill. 2d 67, 78, 510 N.E.2d 840, 845 ("as a general rule, an agent's fiduciary duty is limited to actions occurring within the scope of his agency").

■ Here, Ross asserts that Index breached its duty of care because it permitted Reed to place block orders; it permitted Reed to place orders despite the fact that there were insufficient funds in his account to cover possible margin calls; and it permitted Reed to place orders directly with clerks on the floor of Comex. These allegations are but reflective of Ross' expectations, expectations that go well beyond Index's duty to ensure that Reed's orders, placed pursuant to a valid power of attorney, were properly executed. (Compare *Henderson*, 854 F.2d 941 (fiduciary duty breached when broker failed to comply with customer's order to close out his account).) If Symanco or Reed exceeded the scope of his agency or breached his fiduciary duties, Index cannot be held responsible; Ross' remedy lies against Symanco and its principal, Reed.

III

The final source of duty alleged by Ross to have been breached is based on the relationship of trust existing between himself and Index. He charges Index with willful misconduct, fraud, and a breach of the fiduciary duty of loyalty. Ross' main brief, in a rather confusing manner, treats these as if they are three distinct legal theories. This is clearly not the case. Ross does not allege any type of fraudulent misrepresentation, but relies instead on a theory of constructive fraud. (See generally *Vermeil v. Jefferson Trust & Savings Bank* (1988), 176 Ill. App. 3d 556, 532 N.E.2d 288; *In re Estate of Neprozatis* (1978), 62 Ill. App. 3d 563, 378 N.E.2d 1345.) Constructive fraud has been defined as:

"[A]ny act, statement or omission which amounts to positive fraud or which is construed as a fraud by the courts because of its detrimental effect upon public interests and public or private confidence. It requires neither actual dishonesty nor intent to deceive, being a breach of legal or equitable duty which, irrespective of the moral guilt of the wrongdoer, the law declares fraudulent because of its tendency to deceive others." (*Neprozatis*, 62 Ill. App. 3d at 568, 378 N.E.2d at 1349.)

There is no indication that this concept differs in any meaningful way from a breach of the fiduciary duty of loyalty owed to a principal by

his or her agent. (See Restatement (Second) of Agency §387 (1958); see also *Paskas v. Illini Federal Savings & Loan Association* (1982), 109 Ill. App. 3d 24, 30, 440 N.E.2d 194, 198 ("[c]onstructive fraud will be found in a breach of duty arising out of a fiduciary or confidential relationship").) Consequently, the same duty analysis applies under both theories.

Ross first alleges that Index breached its duty by failing to consider the block trades as "mishandled" trades which, according to industry practice, must be absorbed by the broker. (*Robertson v. Clayton Brokerage Co.* (N.D. Ga. 1984), 587 F. Supp. 678.) He contends that the allocation of the trades to Symanco's customers was an attempt to avoid large trading losses which Index should have rightly accepted.

This argument is without merit. Ross has failed to cite a single case holding that block orders are considered mishandled trades. To the contrary, as we have noted above, the CFTC has held that block trades are permissible as long as there is no preferential allocation of trades. (*Stiller v. Shearson Loeb Rhoades, Inc.* (CFTC 1983), [1982-84 Transfer Binder] Comm. Fut. L. Rep. (CCH) par. 21,780 (Comm'n review); *Maloley v. R.J. O'Brien & Associates* (ALJ 1984), [1984-86 Transfer Binder] Comm. Fut. L. Rep. (CCH) par. 22,366.) The *Robertson* decision is distinguishable since the asserted error did not involve block orders; the brokerage firm in that case closed out the customer's position at a price below that stipulated by the customer.

Ross also claims Index breached a duty of loyalty by permitting Reed to place trades directly with clerks on the trading floor at Comex, thus conspiring in some way to further Reed's wrongful course of conduct. He cites *Rolf v. Blyth, Eastman Dillon & Co.* (2d Cir. 1978), 570 F.2d 38, *cert. denied* (1978), 439 U.S. 1039, 58 L. Ed. 2d 698, 99 S. Ct. 642, a case in which the defendant broker repeatedly told its customer that, if his trading advisor recommended certain stocks, the stocks were good, conservative investments. The evidence at trial established that the broker in fact knew that some of the stocks recommended by the trading advisor were highly speculative. The court stated the broker had engaged in wrongful "handholding," and found that the broker had aided and abetted the advisor's fraud. *Rolf*, 570 F.2d at 48.

The broker's wrongful acts in *Rolf* are distinguishable from Index's conduct in this case. Index did nothing which it knew or should have known would further any misconduct by Reed. Ross did not rely on any representation by Index regarding the quality of Reed's trading, and the customer agreement specifically stated that

Index did not endorse the operating methods of the trading advisor handling his account.

## IV

■ ■ Having held that the trial court correctly concluded that Ross failed to establish a breach of any legal duty owed him by Index, it clearly follows that the trial court properly struck and dismissed his counterclaims and affirmative defenses. In reviewing the trial court's grant of a motion to strike a counterclaim, the ruling will be upheld if there is no set of facts that can be pleaded on which recovery could be allowed. (*First Security Bank v. Bachleda* (1987), 165 Ill. App. 3d 725, 520 N.E.2d 660.) It is also clear that a decision striking an affirmative defense must be affirmed if no facts are pleaded which give rise to a legally cognizable defense. *Vermeil v. Jefferson Trust & Savings Bank* (1988), 176 Ill. App. 3d 556, 532 N.E.2d 288.

■ In this case, Ross has not alleged facts sufficient to establish the breach of any legal duty owed to him by Index, either in the context of a defense or a counterclaim. Index does not dispute any of the factual allegations made by Ross; it challenges his claims solely as a matter of law. We agree with Index that, as a matter of law, it has not breached any duty imposed upon it as a broker handling a nondiscretionary account or imposed by contract. Accordingly, we need not address Ross' remaining issue that "Index may not be indemnified for its own gross negligence or willful misconduct, fraud, or breach of fiduciary duty."

■ This lack of any factual dispute leads us irresistably to affirm the trial judge's grant of summary judgment in favor of Index, for it is elementary that a party is entitled to summary judgment where there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. (Ill. Rev. Stat. 1987, ch. 110, par. 2–1005(c).) Although Ross claims that there are disputed issues of fact, these "fact" disputes concern whether Index owes Ross any duty of care in connection with the managed account program. It is evident that Ross merely disagrees with the trial judge's legal conclusions, as he points to no facts which could possibly lead to a contrary result. Since we have upheld the trial judge's conclusions of law, Ross' challenge to the grant of summary judgment must fail.

We need only briefly address for the sake of completeness Ross' contention in his main brief that the trial judge incorrectly denied his motion to amend his pleadings after they were stricken "without leave to amend." As Index points out in its brief, however, Ross never filed such a motion, and never made this argument before the

trial court, all of which Ross conceded in oral argument before this court, although his reply brief is silent on the point. Since Ross agrees that he neither tendered an amendment nor requested leave to amend, his complaint in his opening brief cannot give him any berth in this court. *Godfrey Township Utility Board v. Hand* (1967), 79 Ill. App. 2d 192, 223 N.E.2d 743.

For the foregoing reasons, the judgment of the trial court is affirmed.

Affirmed.

DIVITO, P.J., and BILANDIC, J., concur.